70 A.3d 544

LARISSA SHELTON AND GREGORY BOHUS, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, PLAIN-TIFFS–APPELLANTS, v. RESTAURANT.COM, INC., DEFEN-DANT–RESPONDENT.

Argued March 27, 2012—Reargued October 22, 2012—Decided July 9, 2013.

420

422

*Bruce D. Greenberg* argued the cause for appellants (*Lite DePalma Greenberg, The Wolf Law Firm,* and *Christopher J. McGinn,* attorneys; *Mr. Greenberg, Mr. McGinn, Andrew R. Wolf, Henry P. Wolfe, Katrina Carroll,* and *Elliot M. Gardner,* on the briefs).

*Michael R. McDonald* argued the cause for respondent (*Gibbons,* attorneys; *Mr. McDonald* and *Damian V. Santomauro,* on the briefs).

*Mark R. Cuker* submitted a brief on behalf of amicus curiae Consumers League of New Jersey (*Williams Cuker Berezofsky,* attorneys).

CUFF, Judge (temporarily assigned) delivered the opinion of the Court.

This matter presents questions of law certified and submitted by the United States Court of Appeals for the Third Circuit pursuant to *Rule* 2:12A–1. We have been asked whether the Truth–in–Consumer Contract, Warranty and Notice Act (TCCWNA or Act), *N.J.S.A.* 56:12–14 to –18, applies to tangible

and intangible property and whether a certificate purchased through an internet marketer for use at restaurants participating in the marketer's network is within the scope of the statute. We conclude that the TCCWNA covers the sale of tangible and intangible property. We also conclude that certificates issued by participating restaurants and offered for purchase by an internet marketer are intangible property primarily for personal, family, or household use, thereby qualifying plaintiffs as consumers.

I.

We commence our discussion with the facts presented by the parties, as to which there is no dispute.[1] Restaurant.com, Inc. (Restaurant.com) is an internet business that markets, advertises, and sells certificates redeemable at participating restaurants. Each certificate contains specific terms and conditions of use. Restaurant.com sells the restaurant-specific certificates directly through its website. Customers, such as plaintiffs, search the website for a specific restaurant, select the amount of the certificate, and make an online payment for the certificate, which is typically less than the face value of the certificate. Once payment is received, Restaurant.com provides the customer with a link to an internet page that displays the certificate, and the customer prints the document for redemption at the participating restaurant.

A participating restaurant may impose conditions, such as prohibiting the use of a certificate on weekends or for the purchase of alcoholic beverages. Each certificate provides on its face the value of the certificate stated in dollars, the name and address of the restaurant where the certificate may be redeemed, any limitations on redemption imposed by the restaurant, and a standard set of provisions imposed by Restaurant.com.

---

[1] We derive the facts from the district court record made pursuant to *Fed. R.Civ.P.* 52(a).

Plaintiff Larissa Shelton purchased ten certificates for various restaurants in New Jersey through the Restaurant.com website from December 9, 2007, to September 9, 2009. Each certificate had a face value of $25 and was redeemable at a specific restaurant in New Jersey. Shelton paid Restaurant.com from $1 to $6 for each certificate. Plaintiff Gregory Bohus purchased one Restaurant.com certificate with a $10 face value for $4. Each certificate displayed on its face various restaurant-specific conditions in addition to standard terms and conditions imposed by Restaurant.com. Two standard terms and conditions on the Shelton and Bohus purchased certificates were the following: 1) the certificate "[e]xpires one (1) year from date of issue, except in California and where otherwise provided by law[,]" and 2) the certificate is "[v]oid to the extent prohibited by law." Plaintiffs alleged, and we accept as true, that since April 4, 2006, all or substantially all certificates redeemable at participating restaurants in New Jersey contain those provisions.

## II.

Plaintiffs Shelton and Bohus, individually and on behalf of a class described as New Jersey residents who purchased a certificate from Restaurant.com after April 4, 2006, filed a complaint in the Superior Court of New Jersey. Plaintiffs further limited the class to purchasers whose certificate, redeemable at a restaurant in New Jersey, contained: (1) a provision identifying an expiration period less than twenty-four months from the date of issue or sale of the certificate; (2) a provision that the expiration period or any other term in the certificate is applicable except where "prohibited by law" without specifying whether or not that term was applicable in New Jersey; or (3) a statement that the certificate is void to the extent prohibited by law without specifying the extent to which it is void or valid in New Jersey. In their complaint, plaintiffs allege that the certificates sold by Restaurant.com violate the New Jersey Gift Certificate Statute (GCS), *N.J.S.A.* 56:8–110 to –112; the New Jersey Consumer Fraud Act (CFA),

*N.J.S.A.* 56:8–1 to –20; and the TCCWNA. Plaintiffs seek treble damages for violations of the GCS, statutory penalties in the amount of $100 for each class member pursuant to the TCCWNA, equitable relief in the nature of an injunction prohibiting future violations of the GCS and TCCWNA, and attorneys' fees and costs.

Restaurant.com removed the matter to the United States District Court for the District of New Jersey and filed a motion to dismiss. The federal district court judge determined that plaintiffs failed to supply any factual allegations to support an ascertainable loss as required by the CFA. The district court judge noted that plaintiffs did not allege any facts to support a finding that the certificates purchased by them were worth less than their face value, were refused by the participating restaurant, had expired at the time of presentation, or were not used based on the false belief of the expiration date. In short, plaintiffs did not allege a loss of any kind. Concluding that plaintiffs "failed to set forth either out of pocket losses or demonstrate loss of value sufficient to satisfy the ascertainable loss requirement under the CFA and GC[S,]" the district court judge dismissed those counts.

The district court judge also determined that plaintiffs were not "consumers" as defined in the TCCWNA because the certificates purchased by them were not property. The judge concluded that the certificates purchased by plaintiffs "provide an individual with a contingent right for discounted services at a selected restaurant[,]" but such a contingent right does not constitute the purchase of "property or service which is primarily for personal, family or household purposes." Therefore, the judge concluded that plaintiffs are not "consumers" as defined by the TCCWNA and that the certificates are not "consumer contracts," and he granted the motion to dismiss.

Plaintiffs appealed, and the United States Court of Appeals for the Third Circuit certified two questions to this Court in accordance with *Rule* 2:12A–1:

(1) Does the New Jersey Truth–in–Consumer Contract, Warranty, and Notice Act (*N.J.S.A.* 56:12–14 to 12–18) ("TCCWNA") apply to both tangible and intangible property, or is its scope limited to only tangible property?

(2) Does the purchase of a gift certificate which is issued by a third-party internet vendor and is contingent, *i.e.*, subject to particular conditions that must be satisfied in order to obtain its face value, qualify as a transaction for "property ... which is primarily for personal, family or household purposes" so as to come within the definition of a "consumer contract" under section 15 of the TCCWNA?

Following briefing and oral argument, this Court reformulated the questions pursuant to *Rule* 2:12A–2, accepted further briefing, and conducted oral argument on the reformulated questions. The reformulated questions are as follows:

1) Whether Restaurant.com's coupons, which were issued to plaintiffs and redeemable at particular restaurants, constitute "property" under the New Jersey Truth–in–Consumer Contract, Warranty, and Notice Act, *N.J.S.A.* 56:12–14 to – 18;

2) If the coupons constitute "property," whether they are "primarily for personal, family or household purposes," *N.J.S.A.* 56:12–15; [and]

3) Whether the sale of the coupons by Restaurant.com to plaintiffs constituted a "written consumer contract," or whether the coupons "gave or displayed any written consumer warranty, notice, or sign," under *N.J.S.A.* 56:12–15.

## III.

In 1981, the Legislature enacted the TCCWNA. *L.* 1981, *c.* 454. The Act provides:

No seller ... shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

[*N.J.S.A.* 56:12–15.]

The TCCWNA also prohibits any provision in a consumer contract requiring a consumer to waive his or her rights under the Act. *N.J.S.A.* 56:12–16. That section further provides that a contract or notice must clearly identify which provisions are void, inapplicable, or unenforceable in New Jersey. *Ibid.* In other words, a contract or notice cannot simply state in a general, nonparticular-

ized fashion that some of the provisions of the contract or notice may be void, inapplicable, or unenforceable in some states. *See ibid.*

The rights, remedies, and prohibitions conferred by the TCCWNA are "in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State." *N.J.S.A.* 56:12–18. As explained in *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 *N.J.* 428, 457, 25 *A.*3d 1027 (2011) (citation omitted),

> [t]he purpose of the TCCWNA is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts. By its terms, it encompasses a wider variety of transactions than do truth-in-lending and truth-in-leasing laws.

Finally, the TCCWNA provides that any person who violates the provisions of the statute shall be liable to an aggrieved consumer for a civil penalty not less than $100, actual damages, or both at the election of the consumer, in addition to reasonable attorneys' fees and court costs. *N.J.S.A.* 56:12–17.

We must, therefore, determine whether plaintiffs are "consumers," whether the certificates sold by Restaurant.com are "property" and are "primarily for personal, family or household purposes[,]" and, if so, whether the certificates are "consumer contracts" or whether they "gave or displayed any written consumer warranty, notice or sign" making them subject to the TCCWNA.

## IV.

The fundamental issue in this appeal is one of statutory interpretation. We, therefore, briefly review the relevant canons of statutory construction. The objective of that task "is to discern and effectuate the intent of the Legislature." *Murray v. Plainfield Rescue Squad*, 210 *N.J.* 581, 592, 46 *A.*3d 1262 (2012) (citing *Allen v. V. & A Bros.*, 208 *N.J.* 114, 127, 26 *A.*3d 430 (2011)).

Our starting point is the plain language of the statute to which we accord the ordinary meaning of the words used by the

Legislature. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written. *Lozano v. Frank DeLuca Constr.*, 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004). We are also guided by the legislative objectives sought to be achieved by the statute. *Wilson ex rel. Manzano v. City of Jersey City*, 209 *N.J.* 558, 572, 39 *A.*3d 177 (2012). We turn to extrinsic tools to discern legislative intent, however, only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme. *Ibid.; DiProspero, supra*, 183 *N.J.* at 492–93, 874 *A.*2d 1039.

## A.

We commence our examination of the text with the definition of "consumer" in section 15 because the TCCWNA is not applicable to this dispute unless plaintiffs are consumers. Pursuant to *N.J.S.A.* 56:12–15, a "consumer" is "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." Therefore, under the TCCWNA, a consumer must be an individual. *See ibid.* That individual must "buy[ ], lease[ ], borrow[ ] or bail[ ] any money, property or service." *Ibid.* The money, property, or service bought, leased, borrowed, or bailed by the individual must be "primarily for personal, family or household purposes." *Ibid.* The TCCWNA does not define "property," but *N.J.S.A.* 56:12–15 expressly excludes transactions involving the lease or sale of real property. Our task is to define "property" in order to determine whether the certificates offered by Restaurant.com are within the scope of the TCCWNA.

Restaurant.com argues that the TCCWNA applies only to tangible property. It further contends that the qualifying phrase "primarily for personal, family or household purposes" underscores its position that the TCCWNA does not include intangible property. Embedded in that argument is a contention that the

TCCWNA is a penal statute and must be interpreted narrowly. Restaurant.com finds support for that argument in the assessment of a penalty for a violation of the statute.

Plaintiffs counter that the plain language of the statute includes both tangible and intangible property. It urges us to read the TCCWNA *in pari materia* with the GCS and the CFA, which will lead to the inexorable conclusion that the TCCWNA includes tangible and intangible property. Countering defendant's contention that the TCCWNA is penal, plaintiffs respond that the TCCWNA is remedial, designed to address abuses in the sale of goods and services to consumers, an area traditionally treated aggressively by the Legislature. Therefore, plaintiffs argue that the TCCWNA is entitled to a broad interpretation to achieve its remedial end.

In discerning whether the TCCWNA is limited to tangible property, we must acknowledge that the TCCWNA is not an isolated enactment. It forms not only a part of the wide array of consumer protections enacted by the Legislature but also a constituent part of the entire body of statutory law of New Jersey.

Our Legislature has codified definitions of commonly used terms, *N.J.S.A.* 1:1–2 to –2b, and general rules of construction, *N.J.S.A.* 1:1–1, which guide our analysis. Within *N.J.S.A.* 1:1–2, the Legislature defined the term "property." Pursuant to *N.J.S.A.* 1:1–2, "property," "unless restricted or limited by the context to either real or personal property, includes both real and personal property." Personal property, in turn,

> includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrance upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership.
>
> [*Ibid.*]

In enacting those terms, the Legislature specifically noted that

> [u]nless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the [defined] words and phrases, *when*

*used in any statute* and in the Revised Statutes, shall have the meaning herein given to them.

[*Ibid.* (emphasis added).]

Because the TCCWNA does not define the term "property," by *N.J.S.A.* 1:1–2's own terms, the default definition of property applies.

As defined generally, the term "property" includes personal property, and personal property expressly includes tangible property—such as goods, money, and written instruments—and intangible property—such as choses in action and rights. Other than the exclusion of transactions involving the lease or sale of residential real estate, *see N.J.S.A.* 56:12–15, the TCCWNA does not expressly exclude personal property. The TCCWNA does not, then, exclude intangible property.

The next inquiry is whether the scope of the TCCWNA or the context in which the term "property" is used is repugnant to including personal property within its meaning. Making such a determination requires us to review the background of the TCCWNA.

The legislative history of the TCCWNA is limited. As originally introduced on May 1, 1980, Assembly Bill No. 1660 was designed to address the inclusion of provisions in consumer contracts, warranties, notices, and signs that violate consumer rights. *See* Sponsors' Statement, *Statement to Assembly Bill No. 1660* (May 1, 1980). The Sponsors' Statement provides:

Far too many consumer contracts, warranties, notices and signs contain provisions [that] clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.

[*Ibid.*]

After highlighting some of the deceptive provisions inserted in consumer contracts, warranties, notices, and signs, the sponsors stated that the bill was designed to "prohibit[ ] businesses from offering or using provisions in consumer contracts, warranties, notices and signs that violate any clearly established right of a

consumer." *Ibid.* The sponsors also stated that the legislation would provide two remedies: (1) civil damages of not less than $100, and (2) the right to petition a court to terminate a contract in violation of the bill. *Ibid.*

The Assembly Commerce, Industry and Professions Committee amended Assembly Bill No. 1660 to change one of the remedies from civil "damages" of not less than $100 to a civil "penalty" of not less than $100, Assemb. B. 1660, 199th Leg., 1st Sess. (N.J.) (as reported by Assemb. Commerce, Indus. & Professions Comm., June 9, 1980), and deleted the requirement that warrantors must advise consumers which provisions are void, unenforceable, or inapplicable in New Jersey, *ibid.,* due to rules issued pursuant to the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 *U.S.C.A.* §§ 2301–2312. Assemb. Commerce, Indus. & Professions Comm., *Statement to Assembly Bill No. 1660* (June 9, 1980).

The Governor's signing statement described the bill as "strengthening provisions of the [CFA]." *Governor's Statement on Signing Assembly Bill No. 1660* (Jan. 11, 1982). In other words, the proposed legislation did not recognize any new consumer rights but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law. *See N.J.S.A.* 56:12–15 to –16.

The progress of the TCCWNA through the Legislature also reveals that its scope was informed to some extent by federal regulatory action. Contemporaneous with legislative consideration of the TCCWNA, the Federal Trade Commission promulgated regulations to effectuate the Magnuson–Moss Act. *See, e.g.,* Pre–Sale Availability of Written Warranty Terms, 40 *Fed.Reg.* 60,168, 60,168–90 (Dec. 31, 1975) (codified as amended at 16 *C.F.R.* pts. 701–703). Congress enacted the Magnuson–Moss Act in 1975, Pub.L. No. 93–637, 88 *Stat.* 2188, in response to concerns about warranties covering automobiles and appliances, *see* S.Rep. No. 93–151, at 4–8 (1973). The legislation mandates specific disclo-

sures of warranties of consumer products costing more than $5, 15 *U.S.C.A.* § 2302, specifies minimum standards for warranties covered by the legislation, *id.* § 2304, and defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes[,]" *id.* § 2301. The Magnuson–Moss Act also defines a "consumer" as a purchaser of any tangible personal property distributed in commerce. *Id.* § 2301(3).[2] Although the impact of the Magnuson–Moss Act was broad, it was confined by its terms to tangible property normally used for personal, family, or household purposes.

The legislative history of the TCCWNA suggests that the Legislature may have shared some of the same concerns as Congress when it enacted the Magnuson–Moss Act. Therefore, the TCCWNA, like the Magnuson–Moss Act, certainly includes warranties issued on automobiles and appliances acquired by consumers. The TCCWNA does not, however, expressly limit its scope to tangible property as the Magnuson–Moss Act does. *Compare N.J.S.A.* 56:12–15 ("Consumer means any individual who buys, leases, borrows, or bails any money, *property* or service which is primarily for personal, family or household purposes." (Emphasis added)), *with* 15 *U.S.C.A.* § 2301(1) (" '[C]onsumer product' means any *tangible personal property* which is distributed in commerce and which is normally used for personal, family, or household purposes...." (Emphasis added)).[3] Indeed, the Legislature's ex-

---

[2] In full, the Magnuson–Moss Act defines "consumer" as "a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 *U.S.C.A.* § 2301(3).

[3] Reference to the legislative history of federal statutes to establish the scope of state legislation is not productive in all instances. Federal legislation may have a more limited scope than state legislation. In some instances, the federal legislation recognizes its limited scope and invites states to prescribe additional

clusion of real property from the TCCWNA, *see N.J.S.A.* 56:12–15, strongly suggests that it intended to include personal property, which, in turn, includes intangible property, *see N.J.S.A.* 1:1–2. As such, there is nothing repugnant to the terms or history of the TCCWNA about construing the term "property" to include intangible property.

Recognizing that the term "property," viewed in isolation, includes intangible property, we must address Restaurant.com's position that the phrase "primarily for personal, family or household purposes" excludes intangible property from the scope of the TCCWNA. That phrase is widely used in both state and federal legislation. *See, e.g.*, 15 *U.S.C.A.* § 1681m (Fair Credit Reporting Act); 15 *U.S.C.A.* § 1692a (Fair Debt Collection Practices Act); *N.J.S.A.* 17:16C–1(a) (Retail Installment Sales Act). In the TCCWNA, the phrase modifies the term "property." *See N.J.S.A.* 56:12–15. Many New Jersey statutes use the phrase in the context of a description of tangible property. *See, e.g., N.J.S.A.* 17:11C–2 (defining consumer loan business); *N.J.S.A.* 56:11–16 (defining consumer transaction); *N.J.S.A.* 12A:9–102(a)(23) (defining consumer goods).

It does not follow, however, that the phrase excludes intangible property. In fact, several statutes use the phrase "primarily for personal, family or household purposes" in the context of a description of intangible property. For example, Chapter 11C of Title 17 of the New Jersey Statutes, which governs corporations and institutions for finance and insurance, including regulation of the consumer loan business, defines a "consumer loan business" as

---

protections that do not conflict with the protections afforded by it. *See, e.g., Hirl v. Bank of Am., N.A.*, 401 *N.J.Super.* 573, 581, 952 A.2d 479 (App.Div.2008) (discussing limited scope of Electronic Fund Transfer Act, 15 *U.S.C.A.* §§ 1693–1693r, and congressional permission for states to enact additional protections not in conflict with federal law), *aff'd*, 198 *N.J.* 318, 967 A.2d 284 (2009). We also need to exercise care with federal legislative history to consider only those parts expressly or implicitly considered by our Legislature. Here, as noted, *see infra* at 441 n. 6, 70 A.3d at 557 n. 6, we know the Legislature was concerned that a portion of the TCCWNA as introduced might be preempted by federal law.

"the business of making loans of money, credit, goods or things in action, which are to be used primarily for personal, family or household purposes. . . ." *N.J.S.A.* 17:11C–2. Similarly, *N.J.S.A.* 56:11–16 defines "consumer transaction" to encompass "the sale of goods, services or anything of value to a customer, primarily for personal, family or household purposes." Credit, things in action, and anything of value encompass intangible property.

Those examples reveal that the Legislature employs the phrase "primarily for personal, family or household purposes" to describe the *use* of the borrowed, purchased, bailed, or leased property rather than the nature of the property. Justice Clifford explicitly addressed the meaning of the phrase "primarily for personal, family or household purposes" in his dissenting opinion in *Collins v. Uniroyal, Inc.*, 64 *N.J.* 260, 265 n. 3, 315 *A.*2d 16 (1974):

> *N.J.S.A.* 12A:9–109(1) states: "Goods are (1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." Thus, the classification is by use and not the nature of the goods.

This Court followed that interpretation in *Hodges v. Sasil Corp.*, 189 *N.J.* 210, 222–24, 915 *A.*2d 1 (2007), where we addressed the scope of the term "debt" in the Fair Debt Collection Practices Act, 15 *U.S.C.A.* §§ 1692–1692o. Pursuant to 15 *U.S.C.A.* § 1692a(5), a debt is " 'any obligation . . . to pay money arising out of a transaction . . . primarily for personal, family, or household purposes.' " *Hodges, supra*, 189 *N.J.* at 223, 915 *A.*2d 1 (alterations in original) (quoting 15 *U.S.C.A.* § 1692a(5)). We concluded that rent owed on a personal residence fell within that statutory definition of debt. *Ibid.; accord D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 *N.J.Super.* 11, 24 n. 2, 501 *A.*2d 990 (App.Div.1985) (emphasizing phrase as use classification).

In sum, the phrase "primarily for personal, family or household purposes" in *N.J.S.A.* 56:12–15 cannot be interpreted to exclude intangible property from the scope of the TCCWNA. Instead, the phrase simply describes the use to which the property is put. Therefore, we conclude that intangible property falls squarely within the scope of the TCCWNA.

## B.

Our next inquiry is whether the certificates offered by Restaurant.com qualify as property "which is primarily for personal, family or household purposes." *N.J.S.A.* 56:12–15. Restaurant.com argues that the certificates or coupons issued by it are fundamentally different from traditional certificates and ball game tickets. It urges that a certificate may confer a right to a discount but insists it is no more than an intangible, inchoate, and contingent right to a discount from another, which does not fall within the scope of the TCCWNA.

The certificates, also referred to as coupons, issued by Restaurant.com bear a close resemblance to gift certificates. Gift certificates are, by their nature, intangible property. *See generally, e.g., In re the Nov. 8, 1996, Determination of N.J., Dep't of the Treasury,* 309 *N.J.Super.* 272, 706 *A.*2d 1177 (App.Div.1998) (recognizing gift certificates as intangible property but not as type of intangible property subject to New Jersey's Uniform Unclaimed Property Act, *N.J.S.A.* 46:30B–1 to –109), *aff'd o.b.,* 156 *N.J.* 599, 722 *A.*2d 536 (1999); *see also* Nat'l Conference of Commissioners on Uniform State Laws, *Uniform Unclaimed Property Act,* Sec. 1 (1995) (including intangible property as evidenced by gift certificate within definition of property). They are governed by the GCS, which defines "gift certificate" as "a written promise given in exchange for payment to provide merchandise [4] in a specified amount or of equal value to the bearer of the certificate." *N.J.S.A.* 56:8–110(d).

The certificates purchased by plaintiffs from Restaurant.com fully meet that definition. Plaintiffs and other purchasers paid money to Restaurant.com, which in turn issued a certificate for use at a participating restaurant. Upon presentation, the purchaser receives goods, namely food and drinks, at a discounted

---

4 *N.J.S.A.* 56:8–110(d) also defines "merchandise" as meaning and including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly, to the public for sale...."

price. The existence of certain terms and conditions of use, such as acceptance only on certain week nights, does not negate the value of the certificate to the purchaser. The contingent nature of the certificate does not remove its status as a promise given in exchange for payment to provide food and drink. Neither Restaurant.com nor a participating restaurant may decline the certificate presented in compliance with the stated terms and conditions of use. The only contingency is whether the purchaser will use the certificate. Neither the terms and conditions of use nor the contingent element of whether a purchaser will use the certificate negates the nature of the certificate as personal property. As noted earlier in this opinion, under *N.J.S.A.* 1:1–2, the default definition of personal property identifies "rights and credits," "evidences of debt," and "all written instruments by which any right to, interest in, or lien or encumbrance upon, property or any debt or financial obligation is created" as examples of personal property. *See also Hampton v. Hampton Holding Co.*, 17 *N.J.* 431, 438, 111 *A.*2d 761 (1955) (inchoate right "is nevertheless an interest in property"). Importantly, many of those examples carry terms and conditions affecting their use and value.

■ Moreover, the very nature of the certificates underscores that those items of intangible property are acquired for personal, family, or household use. A certificate purchased for a sum markedly less than the face value of the certificate permits an individual or family to obtain food at a reasonable price. Dining out and pursuing entertainment may not be essential to daily living, but they are quintessential personal, family, or household pursuits. Restaurant.com certificates are, therefore, "property . . . which is primarily for personal, family or household purposes." *N.J.S.A.* 56:12–15.

## C.

Finally, we must determine whether the coupons or certificates issued by Restaurant.com to plaintiffs are "written consumer contract[s]" or whether the coupons "gave or displayed any writ-

ten consumer warranty, notice or sign." We focus on the former question first.

The TCCWNA does not define "consumer contract." However, the Plain Language Act, *N.J.S.A.* 56:12–1 to –13, which the Legislature enacted a year before the TCCWNA to govern consumer contracts involving amounts up to $50,000, contains a definition of "consumer contract." *See L.* 1980, *c.* 125. *N.J.S.A.* 56:12–1 provides:

> "Consumer contract" means a written agreement in which an individual:
>
> ....
>
> e. [p]urchases real or personal property;
>
> ....
>
> for cash or on credit and the ... property ... [is] obtained for personal, family or household purposes. "Consumer contract" includes writings required to complete the consumer transaction.

There is nothing to suggest that the definition does not govern the phrase "consumer contract" as used in the TCCWNA. Absent an express directive not to incorporate the Plain Language Act definition of consumer contract in the TCCWNA, it is advisable to read those statutes *in pari materia* as they seek to provide specific protections to consumers in the acquisition of property and services.[5] *See In re Petition for Referendum on Trenton Ordinance 09–02,* 201 *N.J.* 349, 359, 990 *A.2d* 1109 (2010) (" 'Statutes that deal with the same matter or subject matter should be read *in pari materia* and construed together as a unitary and harmonious whole.' " (Quoting *St. Peter's Univ. Hosp. v. Lacy,* 185 *N.J.* 1, 14–15, 878 *A.2d* 829 (2005))). ·

---

[5] Our conclusion that the TCCWNA should be read *in pari materia* with the Plain Language Act is not inconsistent with the Appellate Division's holding in *Bosland v. Warnock Dodge, Inc.,* 396 *N.J.Super.* 267, 279, 933 *A.2d* 942 (App.Div. 2007), *aff'd on other grounds,* 197 *N.J.* 543, 560, 964 *A.2d* 741 (2009). While in *Bosland* the Appellate Division found the TCCWNA and the Plain Language Act to be "separate and distinct[,]" it did so only to note that, in order to make a claim under the TCCWNA, a plaintiff does not have to allege that the sales contract is " 'substantially confus[ing]' " because that language is contained only in the Plain Language Act. *Ibid.* (first alteration in original).

■ Measured by that definition, the certificates offered by Restaurant.com must be considered consumer contracts. Through its website, Restaurant.com extends an offer to consumers to dine at participating restaurants at discounted prices. Once a consumer selects the restaurant, chooses the value of the certificate it wishes to purchase, and authorizes a charge to a credit card or debit card, Restaurant.com refers the consumer to another page from which a certificate is printed for use at the selected restaurant. The transaction has all the basic features of a contract: offer, acceptance, consideration, and performance by both parties. *Mayor & Common Council of Hoboken v. Bailey,* 36 *N.J.L.* 490, 493–94 (E. & A.1873); *see also Smith v. SBC Commc'ns Inc.,* 178 *N.J.* 265, 283, 839 *A.*2d 850 (2004) (identifying basic elements of contract).

We reject the argument advanced by Restaurant.com that the transactions between it and plaintiffs cannot be considered consumer contracts because they are not in writing. In 2001, the Legislature enacted the Uniform Electronic Transactions Act (UETA), *N.J.S.A.* 12A:12–1 to –26, to address the steady shift from traditional paper transactions to electronic transactions. *See L.* 2001, *c.* 116, § 6. The UETA governs transactions between parties who have agreed to conduct their transaction by electronic means. *N.J.S.A.* 12A:12–5(b). According to the UETA, a contract cannot "be denied legal effect ... solely because an electronic record was used in its formation." *N.J.S.A.* 12A:12–7(b).

We similarly reject the notion advanced by Restaurant.com that the involvement of a third-party restaurant at which the consumer redeems the certificate negates a consumer contract relationship. We need not plumb the details of the business relationship between Restaurant.com and participating restaurants. Our focus is on the relationship between Restaurant.com and the persons who access its website to review its offerings and pay money to it to acquire a certificate for less than the face value of the certificate.

Carried to its logical conclusion, Restaurant.com would like us to believe that it is merely a Good Samaritan who operates as a

broker between people who like to eat at restaurants and restaurants that are trying to attract customers. That proposition ignores the simple fact that the so-called service involves an exchange of money for the written promise that the purchaser can obtain food and drink at a discounted price. Restaurant.com offers no good reason, other than the possible amount of the aggregate penalty, why it should not be treated as any other purveyor of goods and services for use by the consumer.

We also address whether the certificates issued by Restaurant.com give or "display any written consumer warranty, notice or sign." All acknowledge that the certificates do not contain a consumer warranty.

According to the undisputed facts, each certificate issued by Restaurant.com contains express restaurant-specific conditions. Those conditions are not at issue. Each certificate also contains two standard terms imposed by Restaurant.com. The first term advises the purchaser that the certificate expires one year from the date of issue. The second term states that the certificate is "void to the extent provided by law." Restaurant.com contends that each term is not a "notice" as contemplated by the TCCWNA. It also argues that the TCCWNA is confined to warranties issued by a seller of tangible personal property.

*N.J.S.A.* 1:1–1 provides that words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation. *Murray, supra,* 210 *N.J.* at 592, 46 *A.*3d 1262; *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039. Rather, a court must consider the context because " '[t]he meaning of words [used in a statute] may be indicated and controlled by those [words] with which they are associated.' " *Miah v. Ahmed,* 179 *N.J.* 511, 521, 846 *A.*2d 1244 (2004) (second and third alterations in original) (quoting *Germann v. Matriss,* 55 *N.J.* 193, 220, 260 *A.*2d 825 (1970)). We must also avoid an interpretation that renders words in a statute surplusage. *Cast Art Indus., L.L.C. v. KPMG,*

*L.L.P.*, 209 *N.J.* 208, 224, 36 *A*.3d 1049 (2012). In short, words make a difference. We must assume that the Legislature purposely included every word, and we must strive to give every word its logical effect. *See ibid.*

Earlier in this opinion, we discussed the legislative initiatives in effect at or about the time the Legislature enacted the TCCWNA. We can assume that the Legislature was aware of and informed by consumer initiatives being addressed by Congress and executive agencies charged with enforcing congressional efforts, including the Magnuson–Moss Act.[6] On the other hand, section 15 of the TCCWNA, *N.J.S.A.* 56:12–15, contains terms in addition to warranty; we must assume those terms have a meaning. *See Cast Art, supra*, 209 *N.J.* at 224, 36 *A*.3d 1049 ("[C]ourts must presume that every word in a statute has meaning...." (Internal quotation marks omitted)).

We have identified only one reported case that even broaches the meaning of the term "notice" in the context of a claim under the TCCWNA. In *Barrows v. Chase Manhattan Mortgage Corp.*, 465 *F.Supp*.2d 347, 361–63 (D.N.J.2006), the district court dismissed a TCCWNA claim by a mortgagor based on correspondence between the mortgagor and the lender. Although the court did not have to reach the issue of whether the correspondence must be considered a written notice, the court did note that the TCCWNA contained no definition of "written notice." *Id.* at 362 n. 12.

In the absence of contravening authority, we apply the ordinary meaning of the term "notice." *See N.J.S.A.* 1:1–1. The ordinary meaning of "notice" is "[a] written or printed announcement...." *Black's Law Dictionary* 1164 (9th ed. 2009). Applying that meaning, the certificates issued by Restaurant.com contain a printed

---

[6] Such awareness is evidenced by the Legislature's removal of warrantors from the requirement that consumers must be advised which provisions are void, unenforceable, or inapplicable in New Jersey. *See* Assemb. Commerce, Indus. & Professions Comm., *Statement to Assembly Bill No. 1660, supra* (removing provision due to rules issued under Magnuson–Moss Act).

announcement, which conditions the use of the certificates. We, therefore, conclude that announcement is a notice given by a seller to a consumer in the course of acquisition of property and brings the transaction within the scope of the TCCWNA.

## V.

In the end, we conclude that the TCCWNA is a remedial statute, entitled to a broad interpretation to facilitate its stated purpose. In doing so, we are mindful that classification of a statute as penal or remedial is only a first step in the process of interpretation of a legislative enactment as "[t]here is no magic in labels." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 25.2 at 582 (7th ed. 2008). We must also recognize that a statute enacted to curb some specific conduct or practice may have remedial and punitive elements, and the inclusion of provisions designed to deter certain conduct does not negate the remedial nature of the statute. *See Doe v. Poritz*, 142 *N.J.* 1, 73–74, 662 *A.2d* 367 (1995) (identifying Megan's Law as remedial legislation regardless of deterrent features of community notification and registration requirements); *accord State v. Widmaier*, 157 *N.J.* 475, 493, 724 *A.2d* 241 (1999) (identifying seven factors in any determination of punitive or remedial).

We conclude the purpose of the TCCWNA is facially remedial. The label or descriptor of the deterrent imposed by the Legislature to address the identified prohibited behavior does not negate its overall remedial nature. Moreover, the Governor's signing message identified the TCCWNA as a measure to strengthen the CFA, *see Governor's Statement on Signing Assembly Bill No. 1660, supra,* a statute traditionally afforded a liberal construction, *see Gonzalez v. Wilshire Credit Corp.*, 207 *N.J.* 557, 576, 25 *A.3d* 1103 (2011) ("The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud . . . ." (Internal quotation marks omitted)).

We also conclude the Legislature enacted the TCCWNA to permit consumers to know the full terms and conditions of the

offer made to them by a seller or of the consumer contract into which they decide to enter. Stated differently, a seller, lessor, creditor, lender, or bailee may not make an offer, enter into a contract, or give or display any written consumer warranty, notice, or sign that contains terms contrary to any established state or federal right of the consumer. We have held that the TCCWNA is limited in its scope to tangible or intangible property offered or sold for use by a person, family, or household. We have also held that the acquisition of a certificate offering a discounted meal at a restaurant is intangible property of the sort commonly purchased for personal use rather than business use.

■■■ Thus, plaintiffs can properly be considered "consumers" within the scope of the TCCWNA because the certificates acquired by them through the Restaurant.com website are property primarily for personal, family, or household purposes. Further, in construing the plain language of the terms of the TCCWNA and the Act's relationship to the Plain Language Act, we conclude the certificates purchased from Restaurant.com can be considered "consumer contracts[,]" and the standard terms provided on the certificates can be considered "notices" subject to the TCCWNA.

The certificates or coupons at issue are the product of commercial ventures enabled by technology that developed after the Legislature adopted the TCCWNA. We do not know whether the Legislature specifically envisioned certificates or coupons like the ones Restaurant.com offers and meant to impose a $100 penalty per occurrence in such cases. The statute as drafted, however, covers the certificates in question. The Legislature remains free to change the law should it so choose.

*For the judgment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, and Judges RODRÍGUEZ (temporarily assigned), CUFF (temporarily assigned)—7.

*Opposed*—None.