**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2653-19

JOHN N. FILIPPELLI,

     Plaintiff-Appellant,

v.

JOANNE F. INGIS and
PAUL INGIS,

     Defendants-Respondents.

_____

Argued October 14, 2021 – Decided December 7, 2021

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6308-18.

Robert E. Margulies argued the cause for appellant (Schumann Hanlon Margulies LLC, attorneys; Robert E. Margulies, on the briefs).

Joanne F. Ingis, respondent, argued the cause pro se (Joanne F. Ingis and Paul Ingis, on the brief).

PER CURIAM

Plaintiff John Filippelli appeals from a January 28, 2020 Law Division judgment following a bench trial dismissing his breach of contract complaint against his sister, Joanne Ingis, and her husband, Paul Ingis. We affirm.

We glean the following facts from the one-day bench trial conducted on January 14, 2020.

On December 1, 2016, plaintiff's and Joanne's[1] aunt, Madeleine Gassert, died at the age of eighty-eight, leaving a will designating plaintiff and Joanne as co-executors and beneficiaries, each entitled to fifty percent of her estate with the exception of $40,000, which was to be donated to four charities. Any dispute related to that estate is not part of this appeal. Separately, Gassert had designated Joanne and Joanne's two sons as beneficiaries of an individual retirement account (IRA) she had inherited in February 2016, which was worth approximately $365,000 when Gassert died. Only the IRA is the subject of this appeal.

A few days after their aunt's death, on December 5, 2016, Joanne informed plaintiff he was not a designated beneficiary of the IRA. Nonetheless, Joanne promised plaintiff she would share half the proceeds of the IRA with him, asking

_____

[1] We refer to defendants by their first names to avoid potential confusion caused by their common surname and intend no disrespect.

for nothing in return. Thereafter, on March 7, 2017, Joanne's husband Paul, a certified public accountant, emailed plaintiff stating he could not determine the exact amount of plaintiff's "lump sum" payment because he was waiting to receive the latest IRA account statement. Paul also mentioned that because he had not yet completed his 2016 income tax return, he did not know how a fifty percent withdrawal from the IRA would be taxed.

Nevertheless, on March 23, 2017, Joanne gave plaintiff a check for $35,000 as "a good faith deposit toward" the funds she intended to share. Plaintiff confirmed he was not required to give "anything in return" for that payment or any future payments. After Paul obtained the IRA account statement, he provided plaintiff a written projection that estimated plaintiff's net payment from the IRA would be $56,232 after taxes. That net payment was in addition to the $35,000 plaintiff had already received. The ensuing dispute spanning over a year stemmed from plaintiff's belief that he had been promised a much larger share of the IRA account and defendants' ultimate decision to make no further payment to him.

As events unfolded, in the first few months of 2017, plaintiff and defendants met several times to discuss the IRA funds. Plaintiff testified that at one point, he mentioned to defendants he had "talked to an attorney." Plaintiff

3

stated that early in their discussions, defendants had offered him $110,000 to "settle" the matter and he had agreed to that amount. However, in March 2017, when defendants reduced the amount to $56,232 due to "tax deductions," he refused to accept the reduction. Paul confirmed that during a meeting at plaintiff's home, plaintiff "expressed dissatisfaction" with the reduction and "physically shoved [Paul] out of the house and slammed the door." Defendants explained the original estimate of $110,000 was based on a five-year payout of approximately "$22,000" net each year. However, because plaintiff did not want to wait five years, taxation of the lump sum cash payout reduced the amount he would receive. According to Joanne, plaintiff eventually "reluctantly" accepted the $56,232 figure as his share of the funds. However, Joanne ultimately declined to make any additional payments to plaintiff for the claimed outstanding balance.

The final development in the dispute followed a series of emails in January 2018 revealing significant family strife over the IRA funds. On January 5, 2018, Paul sent plaintiff and several other family members an email stating he would not "approve the transfer of the final $56,232 until the entire family has an in-person meeting . . . and every member of the entire family (both the Filippelli and Ingis families, including spouses) ha[s] signed a promise to be done with

4

this matter once the money has changed hands."  Around this time, Paul also forwarded a "General Release of Liability" (Release Agreement), which stipulated that in exchange for the $56,232 payment, plaintiff would forgo any legal claims related to the IRA account.

Plaintiff initially rejected both the meeting request and the Release Agreement because he did not want to involve his adult children in the dispute. Additionally, plaintiff emailed Joanne on February 25, 2018, and insisted $75,000 was the payout figure they had "agreed on" in 2017.[2]  Although plaintiff claimed he ultimately relented and agreed "at [his] dining room table" to "accept" $56,232,[3] on July 9, 2018, Joanne emailed plaintiff to inform him she had a change of heart and planned to donate the remainder of the IRA funds rather than share it with him.  Joanne believed her decision was in accordance with their aunt's wishes.

---

[2]  Plaintiff testified he arrived at the $75,000 figure by subtracting the $35,000 "good faith" payment from the "originally offered $110,000," but conceded the "original number [was] before Paul calculated taxes."

[3]  Defendants agreed that if plaintiff prevailed in the lawsuit, the amount awarded would be $83,673, instead of $56,232, because the estate was obligated to pay the taxes defendants had paid and would reimburse them for the tax payment.

A-2653-19

On August 29, 2018, plaintiff filed a complaint against defendants alleging breach of contract. Although plaintiff did not claim promissory estoppel in his complaint, he did raise promissory estoppel at trial without objection. Therefore, we treat the claim as if it were raised in the pleadings. See R. 4:9-2.

Following the trial, the judge entered judgment for defendants and dismissed the complaint, finding plaintiff failed to prove "a contract, []or any promissory estoppel upon which relief could be granted." In an oral opinion, the judge noted while the facts relevant to contract law were "undisputed," the interpretation of the facts was "vigorously contested." After making factual findings consistent with the proofs, the judge concluded the parties never entered an enforceable contract. Instead, the judge determined, Joanne "ma[de] a promise of a gift, but was not under a legal compulsion or requirement to do that."

According to the judge, while there were "some confirmatory e-mails" about the promise and the attendant $35,000 payment, "there was never a consummated agreement." The judge explained "[t]here was no meeting of the minds," "no offer and acceptance," and "no consideration by . . . [p]laintiff to . . . [d]efendant[s] for the promise." The judge underscored while there was

"some allegation that [plaintiff] might have gone to a lawyer," there was "no proof that . . . [plaintiff] in any way, shape, or form gave any consideration."

Further, the judge concluded plaintiff could not establish the elements of promissory estoppel. In that regard, the judge found there was no "clear and definite promise" because "[i]t was about splitting half of something" but "what that something might have been was very much in dispute."[4] Additionally, the judge found "no reasonable reliance" by plaintiff and "no testimony" that "[p]laintiff's reliance on the promise caused [him] to suffer a definite and substantial detriment." The judge noted plaintiff knew he had "no right" to any distribution of the IRA because the parties' "aunt did not provide for him" and Joanne's "moral obligation to pay him [was] not one enforceable in law."

In this ensuing appeal, plaintiff argues the judge erred in dismissing his complaint by not applying settled law to the facts presented. We disagree.

"The standards we apply in reviewing the findings and conclusions of a trial court following a bench trial are well-established . . . ." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). "[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made

---

[4] Plaintiff had testified that at some point, the promised amount was further reduced to "somewhere in the mid to low [forty]-thousands."

reasoned conclusions" and will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); accord Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). However, "[q]uestions of law receive de novo review." Allstate Ins. Co., 228 N.J. at 619 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Pertinent to this appeal, to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence:

> first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do," defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."
>
> [Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alterations in original) (quoting Model Jury Charges (Civil), 4.10A "The Contract Claim -- Generally" (approved May 1998)).]

"'[T]he basic features of a contract' are 'offer, acceptance, consideration, and performance by both parties,'" Goldfarb v. Solimine, 245 N.J. 326, 339 (2021) (alteration in original) (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 439 (2013)), and "[b]asic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise," Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002). "The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." Ibid. (quoting Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 289 (1988)). However, acceptance of a gift, or a promise to accept a gift, is not consideration. Restatement (Second) of Contracts § 71 cmt. c (Am. Law Inst. 1981).

Unlike breach of contract, to prevail on a claim of promissory estoppel, a plaintiff does not need to prove there was an enforceable contract. Goldfarb, 245 N.J. at 339. Instead, a plaintiff must establish four elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Id. at 339-40 (quoting Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008)).

A-2653-19

Here, plaintiff contends he entered an enforceable contract with defendants because (1) he agreed not to pursue legal action in exchange for a payout from the IRA and (2) defendants partially performed by paying him $35,000. However, as noted by the judge, plaintiff admitted rejecting the Release Agreement Paul had prepared to settle the dispute, and the record does not show the parties ever made a separate agreement regarding forbearance of plaintiff's claims. See Minoia v. Kushner, 365 N.J. Super. 304, 312 (App. Div. 2004) ("It has been well-settled for at least a century and a half that consideration lies in the mutuality of releases."). Significantly, because plaintiff did not provide any consideration in exchange for Joanne's initial promise to share the IRA proceeds, defendants' $35,000 payment was a gift, not partial performance. Absent consideration, there was no contract to perform. Accordingly, the judge correctly determined the parties never entered a contract.

Regarding the promissory estoppel claim, as the judge pointed out, plaintiff provided no evidence at trial that he suffered any detriment due to his reliance on Joanne's promise. The absence of proof on this element was fatal to plaintiff's claim for relief on a theory of promissory estoppel. "Promises or contracts made on the basis of mere love and affection, unsupported by a pecuniary or material benefit, create at most bare moral obligations, and a breach

10

thereof presents no cause for redress by the courts." <u>Cockrell v. McKenna</u>, 103 N.J.L. 166, 169 (1926). Plaintiff's proofs fail to establish the requirements of either a breach of contract or a promissory estoppel claim. According proper deference to the judge's supported fact findings and reviewing questions of law de novo, we find no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2653-19