**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0125-24

IN THE MATTER OF THE
APPEAL OF THE DENIAL OF
HOWARD L. MARGULIS'S
APPLICATION FOR A
FIREARMS PURCHASER
IDENTIFICATION CARD and
TWO PERMITS TO
PURCHASE A HANDGUN.

_____

Argued September 11, 2025 – Decided October 3, 2025

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-BER-0039-23.

Darren M. Gelber argued the cause for appellant Howard L. Margulis (Wilentz, Goldman & Spitzer, PA, attorneys; Darren M. Gelber, of counsel and on the briefs).

Edward F. Ray, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Edward F. Ray, on the brief).

PER CURIAM

Petitioner, Howard L. Margulis, appeals from the Law Division's order denying his application for a firearms purchaser identification card (FPIC) and two handgun purchase permits (HPP). Deferring to the trial court's fact-finding and credibility assessments, we conclude the record contains substantial evidence to support the trial judge's finding that the "public health, safety, or welfare" would be jeopardized if the applications were granted because petitioner lacked the "essential character of temperament necessary to be entrusted with a firearm." N.J.S.A. 2C:58-3(c)(5). We affirm.

I.

After petitioner applied for an FPIC and for two HPPs and the required investigation was completed, the local police chief denied the application, concluding the issuance of these permits endangered the public health, safety, or welfare. See N.J.S.A. 2C:58-3(c)(5). Petitioner appealed, and the trial judge heard testimony over a two-day period. In opposition to petitioner's application, the State called the investigating detective, petitioner's former spouse, S.H., and S.H.'s ex-boyfriend, M.C.[1] In support of his request, petitioner, his partner, D.Y., and D.Y.'s daughter, A.R., testified.

---

[1] We use the parties' initials to protect their confidentiality. R. 1:38-3(d)(10).

A-0125-24

The record shows the near twenty-year marital relationship between S.H. and petitioner was tumultuous and pockmarked with disturbing violent incidents. For example, while living in Illinois in March 1987, S.H. accused petitioner of punching her with both fists on the upper left side of her back near her shoulders, which caused bruising. Police arrested petitioner and charged him with assault. S.H. then obtained a protection order. The charges were dismissed following petitioner's completion of an anger management program.

In 2003, after the parties moved to New Jersey, petitioner engaged in various incidents of physical and emotional abuse against S.H. and their children. She testified petitioner was "abusive to all of them." Notably, S.H. testified petitioner chased his oldest daughter around the house with a knife and knocked her to the ground and "pummeled the back of her head." S.H. also testified petitioner dragged his son across the carpet that caused rug burns on his back. Finally, after S.H. denied petitioner entry to her home, he threatened to "murder [S.H.] in her sleep" and said "I'll chop your head off and roll it down the street like a bowling ball."

M.C. testified that petitioner made threats to him directly. In January 2005, S.H. refused to permit petitioner to enter her home during a scheduled pick-up of the children for visitation. When M.C. intervened to defend S.H.,

petitioner threatened M.C., stating, "you don't belong here . . . I'm going to take a knife, cut your head open, and let your brains spill out over the street." The record indicates three separate temporary domestic violence restraining orders were issued against petitioner- two in 2003 and one in 2005. The court denied one 2003 request for final restraints. The record indicates the remaining 2003 and the 2005 applications were dismissed.

Petitioner denied the incidents. He testified he never "struck" S.H. nor his children, and refuted ever threatening M.C. All the allegations, according to petitioner, were contrived by S.H. and M.C. Regarding the March 1987 incident, petitioner admitted to being arrested, but denied punching nor bruising S.H. When asked about S.H.'s testimony of other arrests, petitioner initially testified he could not remember being taken into custody, but later added "I could be wrong" and "these things sort of have run together." Petitioner minimized most of the events to which S.H. testified and characterized them as a "kerfuffle."

D.Y., petitioner's current partner, and D.Y.'s daughter, A.R. testified in support of petitioner. Both testified that during their approximately fifteen-year relationship, neither observed petitioner losing his temper, threatening anyone, or being violent.

4                                                         A-0125-24

In a comprehensive oral decision, the trial judge denied petitioner's application for a FPIC and his HPP requests.

The judge believed S.H. noting "she credibly testified as to [petitioner's] temper and his abusive behavior towards not only her, but their children as well . . . ." Although the judge acknowledged S.H.'s occasional lack of detail, the judge attributed it to the stress of reliving prior trauma. The judge also acknowledged M.C.'s testimony as trustworthy, noting M.C. "testified forthright[ly] during both direct and cross[-]examination and had no interest in the outcome of the matter."

On balance, the trial court found petitioner's testimony less than credible noting the testimony regarding his asserted passivity was "self[-]serving and lack[ing] credibility." Notably, the trial judge pointed to petitioner's behavior during S.H.'s testimony:

> [Defense Counsel] It's true, isn't it, that [petitioner] was incarcerated in New York because you lied to the court?
>
> [S.H.] I did not -- . . .
> Lie to the [court] and never did.
>
> Petitioner: Yes, you did.
>
> [S.H.] And he should-
>
> Court: Sir!

A-0125-24

[S.H.]        -- have been—

Court:        Sir!

[S.H.]        -- incarcerated sooner.

The judge found petitioner's conduct at trial to be disturbing:

> What was alarming during [S.H.'s] testimony was not her demeanor, but [petitioner's] demeanor. At one point, [petitioner] had an outburst where he blurted something out and waved his arms in the air to the point where I had to reprimand him over his conduct. This was telling to me.
>
> [Petitioner] is applying for a [FPIC], trying to convince a [c]ourt that he has the proper temperament to own a firearm, but was not even able to control his own temper in the courtroom.

The judge did not attribute much weight to the petitioner's other witnesses and observed their respective testimony was "self[-]serving and not believable" particularly in light of S.H.'s detailed allegations, the 2005 incident with M.C., and petitioner's trial outburst.

Basing his decision primarily on witness credibility assessments, the judge concluded the petitioner's applications should be denied. The trial judge determined petitioner lacked "the essential character of temperament necessary to be entrusted with a firearm" highlighting petitioner's conduct underlying the past behavior, multiple criminal charges, and temporary restraining orders were

6

"concerning to say the least." The judge ultimately found issuance of the requested licenses would not serve the public's health, safety, and welfare. See N.J.S.A. 2C:58-3(c)(5).

Petitioner appealed.

II.

Because of the fact-sensitive nature of the statutory inquiry governing FPIC application and weapons purchase applications, we defer to the court's factfinding and credibility assessments. See In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 199 (App. Div. 2023); In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505-06 (2016). "Heightened deference should be given to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified." M.U., 475 N.J. Super. at 171. Accordingly, we will not disturb the trial court's factual findings and legal conclusions "unless [we are] convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)); see also In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997) ("Ordinarily, an

7

appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence.").  Questions of law, however, are reviewed de novo.  Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. Of Manalapan, 140 N.J. 366, 378 (1995)).

A.

Petitioner initially notes the trial court followed an "incorrect legal standard" when it denied petitioner's application for weapons permits. Consequently, petitioner invites us to scrutinize the constitutionality of N.J.S.A. 2C:58-3 both on its face and as it is applied to petitioner and justifies its request based on a passing reference made by petitioner's counsel in closing argument that petitioner's "second amendment right is being infringed upon . . ." without further detail.  Petitioner contends this claim preserves the issue for our review. It does not.

We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."  Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (quoting Nieder v. Royal Indem. Inc. Co., 62 N.J.

8

229, 234 (1973)) (internal quotation marks omitted). Constitutional issues are not immune from this principle. State v. Galicia, 210 N.J. 364, 383 (2012). Because petitioner failed to raise these issues before the trial court, we decline to address them here.

B.

We conclude the trial judge correctly determined, that under N.J.S.A. 2C:58-3(c)(5) petitioner lacked "character of temperament" and that the public health, safety, and welfare" would be jeopardized if petitioner received a FPIC or had permission to purchase handguns.

Our Legislature acknowledged a citizen's right to possess firearms lawfully unless good cause exists to deprive an owner of them. In re Appeal of the Denial of R.W.T., 477 N.J. Super. 443, 460-61 (App. Div. 2023) (citing In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015) (citing N.J.S.A. 2C:58-3(c))). Circumstances that might disqualify a person from firearm ownership or from FPIC licensure are listed in N.J.S.A. 2C:58-3(c)(1-15). The purported disability at issue in this case appears at N.J.S.A. 2C:58-3(c)(5):

> A handgun purchase permit or [FPIC] shall not be issued:
>
> . . . .
> (5) To any person where the issuance would not be in the interest of the public health, safety[,] or

9

> welfare <u>because the person is found to be lacking</u> <u>the essential character of temperament necessary</u> <u>to be entrusted with a firearm</u>[] . . . .
>
> [(Emphasis added).]

The concept of an "essential character of temperament necessary to be entrusted with a firearm" is not specifically defined in our jurisprudence. Therefore, to interpret this provision, we are guided by the principles of statutory interpretation. To that end, the "first step . . . is to consider the plain language of the statute." <u>State in Interest of K.O.</u>, 217 N.J. 83, 91 (2014). In doing so,

> [w]e will "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005). "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written." <u>Shelton v. Restaurant.com, Inc.</u>, 214 N.J. 419, 429 (2013).
>
> "[O]nly when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with the general statutory scheme," will we turn to extrinsic tools to determine legislative intent." <u>Ibid.</u> This [c]ourt, however, may not "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language." <u>O'Connell v. State</u>, 171 N.J. 484, 488 (2002).

A-0125-24

> [In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 324-25 (2024) (second and fourth alterations in original).]

Further, a court should not examine the challenged portion of a statute in isolation but instead must consider the entire statutory scheme. See State v. Rangel, 213 N.J. 500, 509 (2013) ("We do not view words and phrases in isolation but rather in their proper context and in relationship to other parts of a statute, so that meaning can be given to the whole of an enactment."). However, "[w]hen the statutory language is ambiguous and 'leads to more than one plausible interpretation,' courts may resort to extrinsic sources, like legislative history and committee reports." State v. Twiggs, 233 N.J. 513, 533 (2018) (quoting DiProspero, 183 N.J. at 492-93).

Applying these principles, "character" may be defined as "[t]he traits or qualities that combine to make an individual human being distinctive from others, esp[ecially] as regards morality and behavior." Black's Law Dictionary 291 (12th ed. 2024). Temperament refers to "characteristic or habitual inclination or mode of emotional response." Merriam-Webster's Collegiate Dictionary 1285-86 (11th ed. 2020). "Character of temperament," therefore, reflects one person's individual and unique state of mind. "Essential" means

A-0125-24

"[o]f relating to, or involving the essence or intrinsic nature of something," or, "[o]f the utmost importance; basic and necessary." Black's Law Dictionary, 686.

Considering these definitions, we find the judge's factual findings about the violent actions attributed to the petitioner buttressed by his credibility assessments of the witnesses, clearly supports the conclusion that petitioner lacked "the essential character of temperament necessary to be entrusted with a firearm." N.J.S.A. 2C:58-3(c)(5).

To the extent we have not specifically addressed any of petitioner's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0125-24