JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
**417 Lieutenant John Kaminskas and Chief Daniel Vaniska, who were both members of the Union County Police Department, requested defense and indemnification by the Office of the Attorney General (Attorney General) in a civil action brought against them for alleged investigatory and prosecutorial misconduct. The Attorney General denied their request on the basis that it is a county's duty, under N.J.S.A. 40A:14-117, to defend and indemnify its police officers in such matters. The Appellate Division affirmed that decision.
We agree with the Appellate Division and thus affirm its judgment. Under N.J.S.A. 40A:14-117 and N.J.S.A. 59:10-4, the Legislature has provided that each county -- not the Attorney General -- is responsible for defending and potentially indemnifying its police officers. Neither this Court's decision in Wright v. State, 169 N.J. 422, 778 A.2d 443 (2001), nor N.J.S.A. 59:10A-1 provides otherwise. The Attorney General is accordingly not required **418 to defend and indemnify Lieutenant Kaminskas or Chief Vaniska. *391 I.
A.
This civil action arises out of a criminal matter. In 2006, Emmanuel Mervilus was arrested and charged with first-degree robbery, contrary to N.J.S.A. 2C:15-1 ; aggravated assault, contrary to N.J.S.A. 2C:12-1(b) ; and third-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(d). Mervilus, who maintained his innocence, agreed to take a polygraph examination and stipulated to its admissibility at trial.
Lieutenant Kaminskas administered Mervilus's polygraph examination. At trial, Lieutenant Kaminskas testified that he frequently administered polygraph examinations on behalf of the Union County Prosecutor's Office (UCPO) because it did not employ a polygraphist. At the time Lieutenant Kaminskas administered Mervilus's polygraph examination, Daniel Vaniska was Chief of the Union County Police Department.
Lieutenant Kaminskas testified at Mervilus's trial as the State's polygraph expert. He testified that polygraph tests differentiate reactions of persons who are "telling the truth" and those who are "lying" and thus innocent or guilty. He testified that polygraph examinations are "not just a lie detector [but] also a truth indicator." He further testified that in his opinion Mervilus "wasn't telling the truth." A jury convicted Mervilus of first-degree robbery and aggravated assault.
The Appellate Division reversed his convictions and remanded the matter for a new trial. State v. Mervilus, 418 N.J. Super. 138, 148, 12 A.3d 258 (App. Div. 2011). The Appellate Division found that Lieutenant Kaminskas's testimony was improper because it may have led the jury to "perceive polygraph evidence as infallible" and to "give it disproportionate weight in deciding to convict or acquit." Id. at 147, 12 A.3d 258. The error in admitting that **419 improper testimony was prejudicial, the panel found, because "the State's evidence against defendant [could not be described] as overwhelming" and "[t]he improper polygraph testimony could have made a difference to the outcome." Ibid. On remand, Mervilus was retried and acquitted of all charges.
B.
In November 2014, Mervilus filed a complaint against Lieutenant Kaminskas, Chief Vaniska, and two Union County prosecutors involved in his criminal proceedings, among others, in the United States District Court for the District of New Jersey. As is relevant here, Mervilus's complaint asserted claims for wrongful prosecution and conviction under federal and state statutes and the common law. The complaint alleged that the State's use of a polygraph examination and Lieutenant Kaminskas's testimony were contributing causes to his wrongful conviction and prosecution.
Lieutenant Kaminskas, Chief Vaniska, and the Union County prosecutors requested that the Attorney General defend and indemnify them pursuant to Wright. The Attorney General agreed to defend and indemnify the county prosecutors but not Lieutenant Kaminskas or Chief Vaniska. The Attorney General noted that Wright requires it to defend and indemnify county prosecutors in appropriate circumstances but does not extend to county police officers. In addition, the Attorney General asserted that N.J.S.A. 40A:14-117 requires each county to defend its police officers. Lieutenant Kaminskas and Chief Vaniska appealed the Attorney General's decision.
*392 The Appellate Division agreed with the Attorney General's reasoning and affirmed. The panel determined first that N.J.S.A. 40A:14-117 requires counties to defend their police officers. The appellate panel then considered N.J.S.A. 59:10A-1 to -6 and concluded that the Attorney General's duty to defend, as established in those statutes, applies only to "active and former 'state employees.' " Finally, the panel reasoned that the "narrow exception **420 established in Wright... applies only to county prosecutors and their employees." The Appellate Division found it inappropriate to extend Wright to cover county police officers because that extension would, in the Appellate Division's view, "create an unnecessary conflict between N.J.S.A. 40A:14-117 and N.J.S.A. 59:10A-1 to -6."
We granted the officers' petition for certification, 231 N.J. 557, 177 A.3d 128 (2017), and granted amicus curiae status to the County of Hudson, the New Jersey Association of Counties, and the Monmouth County Prosecutor's Office (MCPO).
II.
A.
Lieutenant Kaminskas and Chief Vaniska contend they are entitled to defense and indemnification by the Attorney General based on "the same theory of Wright" because they, like the members of the Somerset County Prosecutor's Office (SCPO) in Wright, were "non-state employees who were acting as an 'arm of the State.' " The officers argue that Lieutenant Kaminskas's actions in this case "did not arise of and were not incidental to his employment" with the county police department, but were instead undertaken for the UCPO. Stressing that they acted "for the sole benefit and at the exclusive direction of the UCPO" in all matters connected to this case, the officers assert that fairness and justice require that they "be given the same protection granted to the UCPO's employees."
The officers add that the Appellate Division's approach is unduly rigid given that the Attorney General would be required to defend and indemnify employees of the prosecutor's office if those employees had performed the same functions that Lieutenant Kaminskas and Chief Vaniska performed during Mervilus's criminal trial. According to the officers, the mere fact that the UCPO called upon Lieutenant Kaminskas to "fill a void within the [UCPO]" by performing those duties rather than have someone on **421 the UCPO payroll administer and testify about the polygraph test should not make a difference as to defense and indemnification. The officers point to the inclusion of "servants" of the State in the Tort Claims Act's definition of "employee" in support of their argument that the Act's defense and indemnification provisions can extend to them under the circumstances of this case. And the officers contend that Wright requires a context-specific analysis that extends beyond the employer-employee relationship to look at the function performed by the individuals involved.
B.
The Attorney General urges us to affirm the Appellate Division's judgment and stresses that Wright does not apply to county police officers because Wright specifically addressed the defense and indemnification of county prosecutors and the employees of the county prosecutor's office. According to the Attorney General, the Wright Court reached its holding "that county prosecutors and their employees should be defended and indemnified by the State to the extent they engage in investigation and enforcement of the criminal *393 laws" based on two considerations: first, the Attorney General maintains supervisory control over the county prosecutors; and second, county "prosecutor's office employees [are] not guaranteed defense and indemnification from the county." Unlike employees of the county prosecutor's office, the Attorney General contends, county police officers, by statute, remain under their employing county's control at all times, and N.J.S.A. 40A:14-117 provides that the county that employs a particular officer must defend that officer from certain legal actions. Interpreting N.J.S.A. 59:10A-1 and N.J.S.A. 59:1-3 to cover county police officers would, in the Attorney General's view, conflict with N.J.S.A. 40A:14-117.
C.
Amici curiae the County of Hudson and the New Jersey Association of Counties (together, the Counties) argue that the Attorney **422 General is required to defend and indemnify Lieutenant Kaminskas and Chief Vaniska pursuant to Wright because they worked for the State during Mervilus's criminal trial. The Counties contend that when county police officers work under the prosecutor's supervision, they are not supervised by the county and should thus receive defense and indemnification from the Attorney General, not the county. According to the Counties, requiring the county to defend and indemnify a police officer who works under the control of the prosecutor's office is unjust and may discourage counties from allowing their officers to work under the control of the prosecutor's office.
The Monmouth County Prosecutor's Office (MCPO), as amicus curiae, agrees that, pursuant to Wright, the Attorney General should be required to defend and indemnify county police officers who work for the prosecutor's office. The MCPO expresses concern that the Appellate Division's decision will prevent prosecutors from presenting the testimony of county police officers during criminal trials.
III.
We review de novo an agency's interpretation of a statute and legal conclusions. Lavezzi v. State, 219 N.J. 163, 172, 97 A.3d 681 (2014). "The starting point of all statutory interpretation [is] the language used in the enactment." DCPP v. Y.N., 220 N.J. 165, 178, 104 A.3d 244 (2014) (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Assoc., 215 N.J. 522, 536, 74 A.3d 860 (2013) ). "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429, 70 A.3d 544 (2013) (citing Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522, 842 A.2d 156 (2004) ). "We turn to extrinsic tools to discern legislative intent ... only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme." Ibid. (first citing **423 Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572, 39 A.3d 177 (2012), and then citing DiProspero v. Penn, 183 N.J. 477, 492-93, 874 A.2d 1039 (2005) ).
IV.
A.
As part of the Tort Claims Act, the Legislature has set forth a detailed statutory scheme to govern the defense and indemnification of government employees sued for actions taken in the course of their employment. Pursuant to N.J.S.A. 59:10A-1, "the Attorney General shall, upon a request of an employee or former *394 employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment." The Attorney General may refuse to defend an action that falls within section 59:10A-1 only if the Attorney General "determines that" (a) "the act or omission was not within the scope of employment," (b) "the act or the failure to act was because of actual fraud, willful misconduct or actual malice," or (c) "the defense of the action or proceedings by the Attorney General would create a conflict of interest between the State and the employee or former employee." N.J.S.A. 59:10A-2. When the Attorney General is required to defend a State employee under that statute, then "the State shall provide indemnification for the State employee." N.J.S.A. 59:10-1. The Tort Claims Act defines an employee as "an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service," but "the term [employee] does not include an independent contractor." N.J.S.A. 59:1-3.
In addition to those provisions pertinent to State employees, the Tort Claims Act addresses the indemnification of other public servants. N.J.S.A. 59:10-4 empowers "[l]ocal public entities ... to indemnify local public employees consistent with the provisions of this act," and specifies that
[a] local public entity may indemnify an employee of the local public entity for exemplary or punitive damages resulting from the employee's civil violation of **424 State or federal law if, in the opinion of the governing body of the local public entity, the acts committed by the employee upon which the damages are based did not constitute actual fraud, actual malice, willful misconduct or an intentional wrong.
Although the Tort Claims Act uses permissive language as to the indemnification of employees of local public entities, the Act elsewhere creates an affirmative duty to defend county police officers under certain circumstances. As relevant here, N.J.S.A. 40A:14-117 provides that
[w]henever a member or officer of a county police, or county park police, department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the county, or county park commission, as the case may be, shall provide said member or officer with necessary means for the defense of such action or proceeding.
The parties and amici disagree about whether N.J.S.A. 40A:14-117's imposition of a duty of defense upon the county of employment should govern here, or whether the State should defend and indemnify the officers to the extent that they acted to further a State prosecution. The disagreement stems from conflicting interpretations of Wright .
B.
Wright came before this Court as an interlocutory appeal filed during a civil suit brought "against several defendants including thirteen employees of the SCPO." 169 N.J. at 429, 778 A.2d 443. Plaintiff Isaac Wright was arrested and convicted of several drug-related offenses. Id. at 430, 778 A.2d 443. One of his convictions was reversed on direct appeal; two years later, his remaining convictions were reversed by way of post-conviction relief after "[t]he court found that high-ranking Somerset County law-enforcement officials concealed evidence of the illegal search for and seizure of cocaine used at Wright's trial" and that the former Somerset County Prosecutor "knew about, but concealed, the terms of a favorable plea agreement with one of *395 the co-defendants who was a State's witness at Wright's trial." Id. at 431, 778 A.2d 443. While Wright challenged his convictions, he and his wife also filed a civil complaint alleging, in part, that "former Somerset **425 County Prosecutor Nicholas L. Bissell, Jr., and several employees of the SCPO ... , among others, acted to effect his false arrest and to invade his privacy." Id. at 430-31, 778 A.2d 443. Wright later joined the State as a defendant. Id. at 432, 778 A.2d 443.
Before the State was joined, "Somerset County sent the Attorney General a letter requesting representation and indemnification on behalf of the SCPO's employees whom Somerset County was then representing." Ibid. When the Attorney General denied the request, the SCPO employees and other defendants filed "cross-claims against the State for vicarious liability, indemnification and defense costs." Ibid. The trial court granted the State's motion for summary judgment on the vicarious liability claim and dismissed the claims for defense and indemnification. Id. at 434, 778 A.2d 443. On a motion for leave to appeal, we reversed as to all three of those claims. Id. at 452-53, 456, 778 A.2d 443.
We determined the dispositive issue to be "whether the SCPO employees can be considered 'State employees' " for purposes of the Tort Claims Act, N.J.S.A. 59:1-3. Id. at 444, 778 A.2d 443. The Court first noted that N.J.S.A. 2A:158-7, which provides for the payment by the county treasurer, subject to certain limitations, of "[a]ll necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws," did not resolve the issue of defense and indemnification. Id. at 443-44, 778 A.2d 443. Then, the Wright Court noted the "dual or hybrid status" of county prosecutors:
It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.
[ Id. at 454, 778 A.2d 443 (quoting Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996) ).]
In light of that hybrid status and having determined that the TCA should be predominant in its analysis, the Court reasoned that its inquiry should "focus on whether the function that the county prosecutors and their subordinates were performing during the **426 alleged wrongdoing is a function that traditionally has been understood to be a State function and subject to State supervision in its execution." Ibid. We determined "that when county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State and for which the Attorney General is ultimately answerable." Id. at 455, 778 A.2d 443.
Because county prosecutors and their subordinates essentially function as State employees under those circumstances, we concluded that "the State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws." Ibid.
Applying that test to the facts of the case, the Wright Court held "that the *396 State of New Jersey may be required to indemnify and defend SCPO's prosecutors and their subordinates for tortious conduct committed during the investigation, arrest, and prosecution of Isaac Wright, under the relevant provisions of the [Tort Claims Act]." Id. at 456, 778 A.2d 443. The Court remanded to the trial court to determine whether defense and indemnification was appropriate or whether one of the exceptions in N.J.S.A. 59:10A-2 applied. Ibid.
Significantly, we underscored "that the Legislature intended a sharp distinction between State employees and employees of other public entities that may be indemnified by such entities," but we determined that "that distinction did not contemplate public employees, such as county prosecutors, who have a hybrid status." Id. at 455, 778 A.2d 443. Instead, we were "persuaded that the statutory language used in N.J.S.A. 59:1-3 did not take into account the unique role of county prosecutorial employees, paid by the county, but performing a State law enforcement function under State supervisory authority." Id. at 455-56, 778 A.2d 443. Thus, "[t]o vindicate the legislative purpose of providing defense and indemnification to public employees performing an essential **427 State function, we interpret[ed] the defense and indemnification provisions of the [Tort Claims Act] to apply to county prosecutorial employees sued on the basis of actions taken in the discharge of their law enforcement duties." Id. at 456, 778 A.2d 443.
V.
The officers and their amici urge that the logic set forth in Wright applies with equal force to them, inasmuch as all the actions by Lieutenant Kaminskas that Mervilus has challenged pertain to Mervilus's prosecution by the State. But that argument ignores a statute that explicitly governs the defense of county police officers in actions such as this one. N.J.S.A. 40A:14-117's language is clear and unambiguous -- and it applies here: Lieutenant Kaminskas and Chief Vaniska are "defendant[s]" in the underlying civil action, and that action "aris[es] out of ... the performance of [their] duties." Accordingly, N.J.S.A. 40A:14-117 mandates that the "governing body of" Union County defend Lieutenant Kaminskas and Chief Vaniska in the underlying civil action. Union County is therefore responsible for indemnifying Lieutenant Kaminskas and Chief Vaniska pursuant to N.J.S.A. 59:10-4. Because the Legislature has clearly identified the county of employment as the entity responsible for defending and indemnifying county police officers, our inquiry ends. See Shelton, 214 N.J. at 429, 70 A.3d 544.
In Wright, this Court analyzed the "hybrid status" of county prosecutors because the "statutory language used in N.J.S.A. 59:1-3 did not take into account the unique role of" county prosecutors. 169 N.J. at 455-56, 778 A.2d 443. Stated simply, in Wright this Court considered the "unique role" of county prosecutors in the face of uncertainty in the relationship between the statute governing county reimbursement of expenses of the county prosecutor, N.J.S.A. 2A:158-7, and the TCA's clear grant of indemnification and defense costs for state employees, Wright, 169 N.J. at 443-44, 778 A.2d 443. Here, however, faced with the clarity of **428 N.J.S.A. 40A:14-117, which did not exist for N.J.S.A. 2A:158-7, we have no reason to look beyond the Legislature's clear mandate.
To extend Wright's function-based analysis to the officers here, moreover, would frustrate the detailed liability structure the Legislature has enacted, which delineates and allocates the responsibilities to defend and indemnify different categories of employees to specific governmental entities. The "Legislature intended a sharp distinction *397 between State employees and employees of other public entities that may be indemnified by such entities," Wright, 169 N.J. at 455, 778 A.2d 443 -- and Lieutenant Kaminskas and Chief Vaniska clearly fall within the latter category, regardless of the type of work they were performing in this case. As the Appellate Division noted, interpreting N.J.S.A. 59:10A-1 to cover Lieutenant Kaminskas and Chief Vaniska would result in an unnecessary conflict between N.J.S.A. 59:10A-1 and N.J.S.A. 40A:14-117. See State ex rel. J.S., 202 N.J. 465, 480, 998 A.2d 409 (2010) ("[W]hen [statutory] construction involves the interplay of two or more statutes, we seek to harmonize the [statutes], under the assumption that the Legislature was aware of its actions and intended for cognate provisions to work together."); DiProspero, 183 N.J. at 496-98, 874 A.2d 1039 (declining to create a conflict between a statute's preamble and text). We decline to extend Wright in a manner that would create such conflict.
In short, the Legislature has provided that each county -- not the Attorney General -- is responsible for defending and potentially indemnifying its police officers. Accordingly, the Attorney General is not required to defend and indemnify Lieutenant Kaminskas or Chief Vaniska.
VI.
For the reasons detailed above, we affirm the judgment of the Appellate Division.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.