J-S13029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GARY SMITH :
:
Appellant : No. 1189 WDA 2018

Appeal from the PCRA Order Entered June 19, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013605-2011

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.: **FILED MAY 29, 2019**

Gary Smith appeals, *pro se*, from the order entered June 19, 2018, in the Court of Common Pleas of Allegheny County, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Smith seeks relief from the sentence of life imprisonment without the possibility of parole, after the trial court convicted him of murder in the second degree and related offenses. On appeal, Smith claims he received ineffective assistance of all prior counsel, that the trial court abused its discretion, that the prosecutor committed misconduct at trial, that he is actually innocent, and

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

that his sentence is excessive and illegal. For the reasons discussed below,

we affirm.

We take the underlying facts and procedural history in this matter from

this Court's memorandum on direct appeal.

> Co–[d]efendant Eugene McMiller and this [d]efendant, Gary
> Smith, were accused of killing Justin Charles during a robbery on
> October 14, 2011[.] On that day, Michael Elko and Charles
> Coddington were at Mr. Elko's home at 3103 Miles Street in
> C[l]airton. Both Mr. Elko and Mr. Coddington were admitted
> heroin users. A friend of the pair, Justin Charles, came to the
> home with two (2) African–American males, one of whom Mr. Elko
> later identified as [Smith]. Mr. Charles, also a heroin user, was
> trying to arrange a drug deal with the two (2) men. Mr. Charles
> asked to buy two (2) stamp bags of heroin from the men in order
> to sample what the men were selling and then offered that he
> would buy a bundle of stamp bags if he liked the first two (2). The
> men indicated that they did not have the drugs with them and
> would have to leave the house to go get the heroin. The men then
> left the house. Mr. Charles asked Mr. Elko if he would get some
> heroin for him in the meantime, and Mr. Elko left the house to do
> so.
>
> As Mr. Elko was walking in front of his house, he saw [McMiller]
> enter the front door of his home, and [Smith] entering the back
> door[.] Mr. Elko immediately returned to his home, entering the
> house shortly after [McMiller]. As he entered his home, Mr. Elko
> heard [Smith], who was in the kitchen, tell someone to lock the
> front door because there were police in the area. According to Mr.
> Elko, [McMiller] then pulled out a gun and demanded money from
> Justin Charles. Mr. Elko tried to give [McMiller] the $20 that Mr.
> Charles had given him to buy two (2) stamp bags, but [McMiller]
> did not even acknowledge the offer.
>
> [McMiller] threatened that, if Mr. Charles did not give him the
> money, he would give the gun to [Smith], who would use it.
> [McMiller] gave the gun to [Smith], and another demand for
> money was made. In response, Mr. Charles indicated that the
> money was upstairs. Mr. Elko stated that there was no money
> upstairs because Mr. Charles did not live in the home, and then
> the three (3) men walked up the stairs.

When the three (3) men began walking upstairs, Mr. Elko called 911, and, during his report to the 911 operator, he heard shots coming from upstairs. Mr. Charles ran down the stairs, followed by [Smith] with the gun and then [McMiller]. As the three (3) ran toward the back door, there was another gunshot. After the shooting, Mr. Elko saw the two (2) African–American men jump over Mr. Charles and then run together behind some nearby buildings. Mr. Elko was in the back of the house with Mr. Charles when the paramedics arrived. Unfortunately, Mr. Charles was already dead by the time that the paramedics reached him.

Mr. Elko described one of the men who entered his home that day to the 911 operator. He indicated that one of the men was a larger black man with a Muslim-style beard, meaning a beard that went from ear to ear, but with no mustache. Mr. Elko met with a detective from the Allegheny County Police, Homicide Unit, later that day and was presented with photographs of individuals who could have been in his home that day. Mr. Elko identified [Smith] as one of the men who came into his house, and as the man who was originally in the kitchen, when shown a photo array by Detective Hitchings of the Allegheny County police. Mr. Elko identified [Smith] in court as the man whose photo he selected in the photo array and as the man who was in his kitchen that day.

The cases of [McMiller] (2011–13606) and [Smith] were originally joined. Counsel for [McMiller] filed a [m]otion for [s]everance pursuant to Rule of Criminal Procedure 583, stating that [McMiller's] version of events was so antagonistic to [Smith's] defense that it would be impossible for a trier-of-fact to believe both. Specifically, [McMiller] acknowledged in his [m]otion being present at Mr. Elko's residence, with [Smith], at the time of the shooting. The court granted the severance motion on February 16, 2012. While the cases were still joined, counsel for [Smith] filed a motion seeking to preclude the identification testimony of Mr. Charles Coddington, also an eyewitness to the events of October 14, 2011. [The trial court] granted the motion as to [Smith] on March 13, 2012. As such, the only person to present eyewitness testimony in this case was Mr. Elko.

*Commonwealth v. Smith*, 2015 WL 6750722 at **1-3 (Pa. Super. Jul. 21, 2015) (unpublished memorandum) (record citations omitted).

On July 21, 2015, this Court affirmed the judgment of sentence. *Id.* at *1. On December 30, 2015, the Pennsylvania Supreme Court denied leave to appeal. *Commonwealth v. Smith*, 130 A.3d 1289 (Pa. 2015).

On December 8, 2016, Smith filed the instant, timely PCRA petition. On December 14, 2016, the PCRA court appointed counsel, who moved to withdraw on March 29, 2017.[2] On May 31, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the PCRA petition, and, ultimately dismissed the petition and permitted counsel to withdraw on August 23, 2017.

After continued correspondence from Smith, the court reopened the case and, on December 4, 2017, Smith filed a voluminous amended PCRA petition. The Commonwealth filed an answer to the amended petition on March 15, 2018. On April 4, 2018, Smith requested an extension of time to file a response to the Commonwealth's answer. The PCRA court did not respond to Smith's request, and, without issuing a second Rule 907 notice, dismissed the Amended PCRA petition on June 19, 2018.[3] The instant, timely appeal followed. In response to the trial court's order, Smith filed a timely ten-page "concise" statement of errors complained of on appeal on October

---

[2] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] Smith has not challenged the PCRA court's dismissal of his amended petition without first issuing a Rule 907 notice, thus he waived any objection to that defect. *See Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013).

16, 2018.[4]   On October 25, 2018, the PCRA court issued an opinion.   On November 20, 2018, Smith filed a *nunc pro tunc* motion for leave to amend his Rule 1925(b) statement.   The PCRA did not act on Smith's request.

The principles that guide our review are well settled.   To be eligible for relief pursuant to the PCRA, an appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2).   He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived.   42 Pa.C.S.A. § 9543(a)(3).   An allegation of error is waived "if the petitioner could have raised it but failed to do so before trial, during unitary review, on appeal or in a prior state post conviction proceeding."   42 Pa.C.S.A. § 9544(b).   Our standard of review for an order denying PCRA relief is as follows:

> This Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.   Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.   Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that a petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence.

---

[4] Smith's 10-page 8-issue Rule 1925(b) statement is not in compliance with Pennsylvania Rule of Appellate Procedure 1925(b)(4).   **See Commonwealth v. Vurimindi**, 200 A.3d 394, 1031, 1040-1041 (Pa. Super. 2018).   This Court would be well within our rights to dismiss the appeal on this basis.   However, because the PCRA court was able to address Smith's issues and because it does not appear that Smith acted in bad faith, we will address the issues he raised on appeal.   **See id.** at 1043 (holding defendant waived all issues on appeal by filing prolix Rule 1925(b) statement where PCRA court determined that he deliberately raised outrageous number of issues).

*Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011) (citations and quotation marks omitted).

In his first issue, Smith claims that he received ineffective assistance of trial, direct appeal, and PCRA counsel. Smith's Brief, at 7-14. Initially, we note that, because of the scattershot nature of Smith's brief, it is exceedingly difficult to parse the specifics of his claims. However, it appears that he claims that trial counsel was ineffective for coercing him into waiving his right to a jury trial (Smith's Brief, at 7-8), and for failing to investigate and call proposed alibi witness Lolita Page (*id.* at 8-10). Smith claims that direct appeal counsel was ineffective for: (1) not raising the ineffectiveness of trial counsel on direct appeal; (2) not raising the issue of a violation of the Confrontation Clause of the United States Constitution because Smith could not confront McMiller, his co-defendant; (3) not raising the issue that he was actually innocent of robbery; and (4) not raising the issue that the trial court wrongly admitted identification testimony. *Id.* at 10-12. Lastly, Smith avers that PCRA counsel failed to conduct a proper review of his proposed claims and should have filed an amended PCRA petition. *Id.* at 12-14. However, Smith has waived the majority of these claims.

Our standard of review is long settled:

With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction;

and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. Our review of counsel's performance must be highly deferential. To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, [a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first.

***Commonwealth v. Brown***, 196 A.3d 130, 150-151 (Pa. 2018) (citations, internal citations, and quotation marks omitted).

Here, Smith did not raise his claims that trial counsel was ineffective for coercing him into waiving his right to a jury trial, as well as all his claims regarding ineffective assistance of direct appeal and PCRA counsel in his Rule 1925(b) statement. ***See*** Statement of Errors Complained of on Appeal, 10/16/2018, at unnumbered pages 1-10. As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa. Super. 2011), *appeal denied*, 827 A.2d 430 (Pa. 2003) ("[A Rule 1925(b)] [s]tatement which is too vague to allow the

- 7 -

court to identify the issues raised on appeal is the functional equivalent to no [c]oncise [s]tatement at all."); ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* ***Commonwealth v. Burton***, 973 A.2d 428, 431 (Pa. Super. 2009). Thus, Smith waived these claims.

Smith's only remaining claim of ineffective assistance of counsel is that trial counsel was ineffective for failing to call proposed alibi witness Lolita Page.

> To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Brown***, ***supra*** at 167 (citation omitted).

Here, Smith did not attach any witness certification from Lolita Page to either his PCRA or amended PCRA petitions, did not delineate the specifics of her testimony, did not state that she would testify at a PCRA hearing, and did not indicate that she was ready and willing to testify at trial. It is also unclear if Smith ever informed trial counsel of her existence. These omissions are fatal to his claim. ***See*** Pa.R.Crim.P. 902(A)(15); ***Brown***, ***supra***. Smith's first claim fails.

In his second claim, Smith alleges that the trial court committed numerous errors in its rulings throughout the trial process.[5] Specifically, Smith contends that the trial court's rulings were not impartial because it also heard McMiller's case. Smith's Brief, at 14-17. In his third issue, Smith claims the prosecutor committed misconduct by making several false statements to the trial court.[6] *Id.* at 17-18. However, Smith waived these claims. *See* 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). We note that, generally, claims of trial court error and prosecutorial misconduct, other than those enumerated in 42 Pa.C.S.A. § 9543(a)(2)(i-viii), are not cognizable under the PCRA. Here, Smith could have raised his claims of trial court bias and prosecutorial misconduct on direct appeal, but he failed to do so. Accordingly, we need not address Smith's second and third arguments further.[7]

---

[5] Smith's second claim is a direct claim of trial court error, which he raises independently of his claims of ineffective assistance of counsel. *See* Smith's Brief, at 14-17.

[6] Again, this a direct claim of prosecutorial misconduct, raised separate and apart from Smith's claim of ineffective assistance of counsel. *See* Smith's Brief, at 17-18.

[7] We note, moreover, that Smith did not raise his second and third claims in his Rule 1925(b) statement and he waived them for that reason as well. *See* Pa.R.A.P. 1925(b)(4)(vii).

In his fourth claim, Smith seems to challenge both the weight and sufficiency of the evidence, claiming he is actually innocent of the crimes. Smith's Brief, at 18-21.[8]  However, to the extent that Smith alleges that the evidence was not sufficient to sustain his conviction; the claim is again waived because it was not presented on direct appeal.  **See** 42 Pa.C.S.A. § 9544(b). To the extent that Smith is challenging the weight of the evidence, that issue was previously litigated (and rejected) on direct appeal.  **See Smith**, **supra**, 2015 WL 6750722, at \*\*5-6.  **See also Commonwealth v. Spotz**, 47 A.3d 63, 101 (Pa. 2012) (issue previously litigated is not cognizable under PCRA). Thus, Smith's fourth claim fails.

In his fifth and final claim, Smith challenges both the discretionary aspects and legality of his sentence.  Smith's Brief, at 21-22.  To the extent that Smith challenges the discretionary aspects of his sentence, we conclude this issue is waived as such a claim is not cognizable under the PCRA.  **See** 42 Pa.C.S.A. § 9543(a)(2)(i-viii).[9]  Accordingly, this argument fails and/or is waived.

---

[8] Like Smith's second and third claims, his fourth claim is a direct challenge to the weight and sufficiency of the evidence, made separately from his ineffective assistance of counsel claims.  **See** Smith's Brief, at 18-21.

[9] It is not clear whether Smith is challenging just the discretionary aspects of the sentence for robbery, or the entire sentence.  We note that the record reflects that the trial court sentenced Smith to second-degree murder, which carries a mandatory life sentence.  Thus, it could not impose any other sentence for that conviction.

Smith also purports to challenge the legality of his sentence, a claim that is cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543(a)(2)(vii). However, our review of Smith's brief demonstrates that his challenge to the legality of his sentence for robbery is merely a reiteration of his claim that the evidence was not sufficient to sustain his conviction, a claim we have already disposed of. Thus, Smith's final claim fails.

Because we have concluded that all of the issues raised in Smith's appellate brief were either previously litigated, waived, or lacking in merit, we conclude the PCRA court did not err in dismissing Smith's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/2019

- 11 -