**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1174-21

LEANDER WILLIAMS,

     Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

     Respondent.

_____

Argued October 3, 2022 – Decided October 18, 2022

Before Judges Currier, Enright and Bishop-Thompson.

On appeal from the New Jersey State Parole Board.

John P. Flynn, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John P. Flynn, of counsel and on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Leander Williams challenges the December 15, 2021 final agency decision of respondent State Parole Board, which affirmed the special condition that Williams enter a 180-day residential treatment program (RTP) upon his administrative parole release. We affirm.

Williams, now fifty-one years old, has been arrested forty-five times since he was a teenager; he has twenty prior convictions, most of which are drug related. Williams has served at least eight prison sentences. While incarcerated between 2007 and 2009, he participated in an organizational scheme to provide contraband to fellow inmates. Additionally, he has a history of multiple probation and parole violations.

In July 2019, Williams was sentenced under various indictments to an aggregate eight-year prison term, with a four-year period of parole ineligibility, following convictions for: third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); two counts of third-degree possession of a CDS with intent to manufacture, distribute or dispense, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); two counts of third-degree distributing a CDS near school property, N.J.S.A. 2C:35-7(a); and fourth-degree contempt, N.J.S.A. 2C:29-9(a).

2

While serving this aggregate sentence, Williams engaged in treatment for substance abuse with Alcoholic Anonymous, the Bo-Robinson Treatment and Assessment Center and the Harbor House. In April 2021, he submitted to a mental health parole evaluation and the evaluator determined Williams was a "medium risk for recidivism." The evaluator also opined "[t]he likelihood of . . . Williams successfully completing a projected term of parole is fair to poor due to [his] past criminal lifestyle, limited pro[-]social problem-solving skills, insufficient pro-social support network, limited education and drug relapse risk." (emphasis added).

In September 2021, a Board panel reviewed and certified Williams for administrative parole release under the recently enacted Earn Your Way Out (EYWO) Act, N.J.S.A. 30:4-123.55b.[1] The panel also imposed a special condition mandating Williams's participation in an RTP for a minimum of 180 days. Williams became eligible for parole the following month, having served out his minimum sentence.

In October 2021, Williams administratively appealed the special condition, arguing the Board lacked the statutory authority to compel his participation in an RTP once he qualified for administrative parole release under

---

[1] The EYWO Act became effective February 1, 2021.

A-1174-21

the EYWO Act. He further argued the special condition created an undue hardship for him because it interfered with his ability to see his wife, who was hospitalized and terminally ill with cancer.

On November 10, 2021, two Board panel members affirmed the special condition.[2] Nine days later, Williams requested that his administrative appeal be considered by the full Board. Before the full Board had the opportunity to address his appeal, Williams was released to the RTP and subsequently completed the 180-day program.[3]

In December 2021, shortly after Williams commenced the RTP, his parole officer (PO) granted Williams's request to visit his wife in the hospital. On the day of the scheduled visit, the PO advised Williams he was a "flight risk" and

---

[2] The two-person Board panel initially recommended the duration of the RTP be reduced to a minimum term between 90 and 180 days.

[3] The State previously moved for dismissal of this appeal, contending it was moot. We denied its application in June 2022, and at argument, the State conceded it no longer seeks dismissal of the appeal on this basis. Moreover, because we are satisfied the issues in controversy here are capable of evading review, we exercise our discretion to resolve them, notwithstanding Williams's completion of the RTP. See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

needed an escort to the hospital due to his history of violating parole.[4] Williams became "defensive and belligerent" with his PO and questioned why he was assigned to the RTP. Because Williams became increasingly "verbally aggressive" and "argumentative," the PO told him to return to the housing unit and "regroup." Based on Williams's ongoing behavioral problems, the visit was postponed to the following day.[5]

On December 15, the full Board affirmed the panel's imposition of the RTP as a special condition of Williams's administrative parole release. The Board concluded:

> [p]ursuant to N.J.S.A. 30:4-123.55d(b), an inmate released on administrative parole shall be subject to the provisions and conditions established by the appropriate Board panel in accordance with the procedures and standards set forth in N.J.S.A. 30:4-123.59. The Board also finds that pursuant to N.J.S.A. 30:4-123.59(b)(1)(a)[,] in addition to the general conditions of parole, the Board panel may impose additional special conditions of parole in an offender's case deemed reasonable . . . to reduce the likelihood of recurrence of criminal behavior. The Board finds . . . Williams participated in Alcoholics Anonymous . . .[,] the Bo-Robinson Treatment and Assessment Center . . . and . . . Harbor House . . . . . However, . . . [he] has a

---

[4] On one occasion, Williams absconded from parole supervision and had no contact with his parole supervisor for approximately three months before he was arrested.

[5] Williams's wife passed away eighteen days after the visit.

substantial criminal history involving drugs; . . . [and] is currently incarcerated for four drug[-]related offenses; . . . [His] offenses involve him selling cocaine and crack cocaine; [his] record reflects that he used cocaine in his teenage years and consumed alcohol daily; and . . . [he] has had several probation and parole opportunities in the past with violations[,] including failure to complete the Stages To Enhance Parolee Success Program. Therefore, the Board concurs with the Board panel's assessment that the imposition of the special condition requiring . . . Williams'[s] successful completion of a residential community program was . . . reasonable . . . to reduce the likelihood of recurrence of criminal behavior. The Board finds it imperative that . . . Williams receives additional programming to address his criminal behavior and substance abuse history, as well as obtain additional life/job skills, and that he will be able to participate in such programming in a residential community program.

. . . .

The Board finds that placement in the Electronic Monitoring Program or release to the community is not appropriate at this time as it is imperative that . . . Williams receive additional program[m]ing in a residential community program.

Shortly after the full Board issued its decision, Williams moved for emergent relief before us, seeking vacatur of the RTP condition. We denied the application, but subsequently granted his request to accelerate his appeal. The Supreme Court also denied Williams's request for emergent relief, noting, as we had, that Williams could apply to the Board for visits with his wife.

6

On appeal, Williams urges us to reverse the Board's imposition of the RTP as a special condition. He again contends the Board "lacks statutory authority to parole an inmate who qualifies for administrative parole release under the [EYWO] Act to a residential facility." In addition, he argues "the special condition mandating that [he] remain in a residential facility" was "arbitrary, capricious, and unreasonable" because it did "not reasonably reduce the likelihood of recurrence of criminal behavior and amount[ed] to an undue hardship." We are not persuaded.

The scope of our review of an administrative agency's decision is limited. See Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). "Our review of the Parole Board's determination[s] is deferential in light of its expertise in the specialized area of parole supervision." J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We affirm an agency determination unless it "'went so far wide of the mark that a mistake must have been made.'" N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988) (quoting 613 Corp. v. State, Div. of State Lottery, 210 N.J. Super. 485, 495 (App. Div. 1986)).

7

We recognize "[t]o a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves individualized discretionary appraisals." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001) (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)). Such appraisals are presumed valid. McGowan, 347 N.J. Super. at 563. Therefore, "[w]e will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies." K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 30 (App. Div. 2019) (citations omitted). But an agency's statutory interpretation is reviewed de novo. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002).

It is well established "[t]he Parole Board 'is the administrative agency charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979[, N.J.S.A. 30:4-123.45 to - 123.76].'" Acoli v. N.J. State Parole Bd., 250 N.J. 431, 477 (2022) (quoting In re Application of Hawley, 98 N.J. 108, 112 (1984)).[6] Under this Act, the

_____

[6] Williams's crimes were committed after substantial revisions to the Act were adopted in 1997. "Under the current version of N.J.S.A. 30:4-123.53, the Board may deny parole if it is shown by a preponderance of the evidence that an 'inmate has failed to cooperate in his or her own rehabilitation or that there is a

Board has "broad authority" to "discharge . . . its responsibilities," which responsibilities "include imposing 'specific conditions of parole.'" J.K. v. N.J. State Parole Bd., 247 N.J. 120, 131 (2021) (quoting N.J.S.A. 30:4-123.48(d); 30:4-123.59(b)(1)). Additionally, the Parole Act of 1979 allows the Board to parole an inmate to a residential facility if the inmate would not otherwise be released under N.J.S.A. 30:4-123.53. See N.J.S.A. 30:4-123.59(d).

As our Supreme Court recently noted,

> [i]n describing the types of conditions that the Board may impose [under N.J.S.A. 30:4-123.59(b)(1)], the Legislature did not enumerate an exclusive list, but rather provided that "[s]uch conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime." Ibid. (emphasis added). For purposes of statutory construction, we view legislative use of the words "include, among other things," ibid., as "term[s] of enlargement, not of limitation," Zorba Contractors, Inc. v. Hous. Auth. of Newark, 282 N.J. Super. 430, 434 (App. Div. 1995) [(citation omitted)]. Accordingly, the Legislature's use of those terms here indicates that it did not intend to specify every permissible condition of parole that the Board may impose.
>
> [J.K., 247 N.J. at 131-32.]

---

reasonable expectation that the inmate will violate conditions of parole imposed pursuant to [N.J.S.A. 30:4-123.59] if released on parole at that time.'" Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 304 n.8 (App. Div. 2022).

Mindful of the Court's expansive view in this regard, we observe that under the EYWO Act, certain inmates are entitled to administrative parole release

> at the time of primary or subsequent parole eligibility provided that:

>> (1) the inmate has not been previously convicted of, adjudicated delinquent for, or is currently serving a sentence imposed for any crime enumerated in [N.J.S.A. 2C:43-7.2(d)]; [N.J.S.A. 2C:43-6(c) or (g)]; [N.J.S.A. 2C:7-2(b)(2)]; or [N.J.S.A. 30:4-27.26];

>> (2) the inmate has not committed any prohibited acts required to be reported to the prosecutor pursuant to regulations promulgated by the commissioner during the current period of incarceration, and has not committed any serious disciplinary infraction, designated in regulations promulgated by the commissioner as a prohibited act that is considered to be the most serious and results in the most severe sanctions, within the previous two years;

>> (3) <u>the inmate has completed relevant rehabilitation programs</u>, as determined by the Department of Corrections and State Parole Board, available at the correctional facility . . . ; and

>> (4) crime victims have received notification as required by law.

A-1174-21

[N.J.S.A. 30:4-123.55d(a) (emphasis added).][7]

And pertinent to this appeal,

> an inmate who meets the criteria set forth [under N.J.S.A. 30:4-123.55d(a)] . . . . shall, during the term of parole supervision, remain in the legal custody of the Commissioner of Corrections, be supervised by the Division of Parole of the State Parole Board, and be subject to the provisions and conditions established by the appropriate board panel in accordance with the procedures and standards set forth in [N.J.S.A. 30:4-123.59].
>
> [N.J.S.A. 30:4-123.55d(b) (emphasis added).]

Notwithstanding the wording of N.J.S.A. 30:4-123.55d(b), Williams claims an inmate paroled under the EYWO Act "is automatically entitled to 'administrative parole release' . . . if [the parolee] meets certain objective criteria" and the parolee cannot be subjected to the condition of an RTP. In response, the State argues

> nothing in the plain language of N.J.S.A. 30:4-123.59(d) indicates that it represents the only circumstance in which the Board can parole an inmate to a residential facility. Nor does its plain language restrict the Board from imposing a special condition of parole to a residential facility for inmates released under administrative parole.

---

[7] Once an inmate meets the criteria set forth in N.J.S.A. 30:4-123.55d(a), "a [Board panel] hearing shall not be required." N.J.S.A. 30:4-123.155d(b).

11

Courts "construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)). If the plain language leads to a clear and unambiguous result, the court's job is complete, Matter of Commitment of W.W., 245 N.J. 438, 449 (2021), and the court applies "the law as written." Kaminskas v. Off. of the Att'y Gen., 236 N.J. 415, 422 (2019). Courts "turn to extrinsic tools to discern legislative intent . . . only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013).

Guided by these principles, we agree with the State that the plain language of the EYWO Act does not preclude the Board from imposing the special condition of an RTP for an inmate granted administrative parole release. Further, the EYWO Act explicitly permits the Board to set parole conditions "in accordance with the procedures and standards set forth in . . . [N.J.S.A.] 30:4-123.59," the same statute that has been read expansively by our Court in recognition of the Board's "broad authority."

12

We also are not convinced Williams has demonstrated a legal basis for us to conclude the Board's decision was arbitrary or capricious. To the contrary, when the Board determined it was reasonable for Williams to complete an RTP "to reduce the likelihood of recurrence of criminal behavior," it cited numerous reasons for affirming the special condition, including that Williams: had "a substantial criminal history involving drugs"; was "currently incarcerated for four . . . drug[-]related offenses . . . [including] him selling cocaine and crack cocaine"; and "had several probation and parole opportunities in the past with violations." Moreover, the Board deemed "it imperative that . . . Williams receive[] additional programming to address his criminal behavior and substance abuse history," but also to "obtain additional life/job skills," noting such programming was available "in a residential community program."

The Board's findings are amply supported in the record and entitled to our deference. See J.I., 228 N.J. at 230. Further, considering Williams's extensive criminal history, his longstanding struggle with substance abuse, and his multiple probation and parole violations, we discern no basis to conclude the Board's decision to have Williams participate in a specific RTP — a program tailored to assist him with specific issues and provide him with "life/job skills" — was arbitrary or capricious.

A-1174-21

In reaching this determination, we do not ignore that Williams participated in substance abuse treatment programs prior to his administrative parole release. But the Board recognized Williams engaged in treatment with Alcoholics Anonymous, the Bo-Robinson Treatment and Assessment Center, and the Harbor House while incarcerated, and still found it "imperative" he participate in additional programming. We perceive no reason to second-guess the Board's conclusion, given the individualized assessment it undertook before outlining the issues Williams needed to address. It also is worth noting the Board's assessment was not altogether different from that of the evaluator who conducted a mental health evaluation of Williams months before his release. In fact, the evaluator determined Williams was "a medium risk for recidivism" and concluded the "likelihood of . . . Williams successfully completing a projected term of parole" was "fair to poor" for a variety of reasons, including his "past criminal lifestyle" and "drug relapse risk."

Finally, we address Williams's contention the Board's imposition of the RTP as a special condition constituted an undue hardship. To support his argument, Williams highlights his inability to be with his wife when she was dying of cancer; he also stresses he was his eighteen-year-old son's sole caregiver when the condition was imposed. Although we recognize Williams's

14

absence from the lives of both family members likely exacerbated an already difficult situation, we cannot conclude his placement in the RTP was an undue hardship.

"Under N.J.A.C. 10A:71-6.6(a), '[t]he appropriate Board panel or the Board may modify or vacate a condition of parole at any time for cause.'" J.K., 247 N.J. at 134 (quoting N.J.A.C. 10A:71-6.6(a)). Further, a parolee may appeal a Board's decision to impose a condition on parole if "[t]he condition . . . will impose an undue hardship on the parolee or inmate." N.J.A.C. 10A:71-4.1(b)(1). The burden to prove the Board acted unreasonably rests with the appellant. See Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993).

Here, it is evident Williams was given the opportunity to visit his wife after his administrative parole release. Also, as the Supreme Court and we observed when denying his applications for emergent relief, Williams was free to make an application to the Board for additional visits with his wife. Moreover, he admits his son had reached majority by the time Williams was paroled and released to the RTP. Under these circumstances, Williams falls short of meeting his burden and showing his assignment to the RTP, a program

designed to enhance his chance of success on parole, amounted to an undue hardship.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION